**Robert SIAS, Appellee-Cross-Appellee,**

v.

**CITY DEMONSTRATION AGENCY and City of Los Angeles, Appellees-Cross-Appellants.**

**Nos. 77–2390, 77–2624.**

United States Court of Appeals, Ninth Circuit.

Nov. 8, 1978.

Rehearing Denied Dec. 29, 1978.

Robert Sias, pro se.

Shelly I. Rosenfield (argued), Los Angeles, Cal., for appellees-cross-appellants.

Before HUFSTEDLER and TANG, Circuit Judges and SCHWARZER,[*] District Judge.

WILLIAM W SCHWARZER, District Judge:

Sias, who prevailed below (appearing in propria persona), seeks reversal of several rulings by the trial court which, among other things, denied reinstatement and full back pay. The trial court determined that Sias was discharged in violation of Title VII in retaliation for his opposition to alleged acts of racial discrimination by the City of Los Angeles.[1] The City, in its cross-appeal,

---

[*] The Honorable William W Schwarzer, United States District Judge for the Northern District of California, sitting by designation.

1. The district court dismissed plaintiff's claims based on 42 U.S.C. §§ 1981 and 1983 and the fourteenth amendment before trial. Inasmuch

does not deny that Sias was discharged for writing a letter of grievance to the Regional Administrator of the Department of Housing and Urban Development (HUD). Rather, it contends that, inasmuch as the trial court made no finding of actual discrimination, it cannot be held to have violated 42 U.S.C. § 2000e–3.

Sias entered the employ of the City Demonstration Agency (CDA), an agency of the City of Los Angeles established under the Model Cities Act, in June of 1971. While employed at the CDA, Sias was a member of an affirmative action group which sought qualified Mexican-Americans for CDA positions. Sias was concerned that an insufficient number of Mexican-Americans held executive positions with the CDA, and that Mexican-Americans were not well represented in administrative positions at the CDA Central Office. In late July of 1971, Sias was promoted. The promotion was rescinded the next day, however, following the discovery of a misrepresentation in Sias' application. Subsequently, Sias was suspended for five days for "going over his superiors' heads" by writing a letter to HUD complaining about the rescinding of his promotion.[2]

On May 19, 1972, Sias wrote to Charles Frankel, Regional Administrator for HUD, complaining of a deficiency in the number of Mexican-American employees at the CDA. Sias was discharged on June 21, 1972, on the stated ground that the letter to Frankel violated the "anti-politicking" policy of the CDA which prohibited employees from registering complaints with federal or local agencies or officials without first obtaining authorization from a CDA administrator.

Sias filed a charge with the EEOC in August, 1972. The Commission issued a right to sue letter in October, 1975, and this action was filed in December of that year, approximately three years and six months after Sias' discharge.

as we affirm the judgment for plaintiff under Title VII, it is not necessary to consider these other claims nor the propriety of the district court's post-trial finding that the discharge violated plaintiff's constitutional right, a finding we must under the circumstances treat as surplusage.

## I

### Did the Trial Court Err in Finding That Appellant's Discharge Violated Title VII?

In its cross-appeal, the City urges a reversal of the trial court's determination that Sias' discharge constituted a violation of 42 U.S.C. § 2000e–3(a) on the ground that actual discrimination had not been proved.

The trial court found that Sias' discharge had racial implications in that Sias, a Mexican-American, was discharged because of his insistence that he be promoted, his persistence in urging that the CDA employ more Mexican-Americans, and his support for the planning of programs which would be helpful to the housing and social problems encountered by Mexican-American people. It concluded that his discharge resulted from the racially discriminatory practices of the CDA. The trial court did not expressly find, however, that the CDA practices which Sias opposed were, in fact, violations of Title VII. The issue thus presented is whether a section 2000e–3(a) violation requires a finding that the employment practice complained of was *in fact* a Title VII violation.

Section 2000e–3(a) provides, in part, as follows:

It shall be an unlawful employment practice for an employer to discriminate against any of his employees . . . because he has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter.

This section contains two different clauses known, respectively, as the "participation" and the "opposition" clause. *See,* Schlei

2. The matter of the promotion, rescission and suspension was not at issue in the trial inasmuch as it was a part of the claim under 42 U.S.C. § 1983 which had previously been dismissed.

and Grossman, Employment Discrimination Law, 416–418. It is well settled that the participation clause shields an employee from retaliation regardless of the merit of his EEOC charge. *Pettway v. American Cast Iron Pipe Co.*, 411 F.2d 998 (5th Cir. 1969). Whether the opposition clause affords employees similar protection, however, appears not to have heretofore been decided by an appellate court; decisions of district courts have split on the issue.

■ The considerations controlling the interpretation of the opposition clause are not entirely the same as those applying to the participation clause. The purpose of the latter is to protect the employee who utilizes the tools provided by Congress to protect his rights. If the availability of that protection were to turn on whether the employee's charge were ultimately found to be meritorious, resort to the remedies provided by the Act would be severely chilled. See, *Pettway v. American Cast Iron Pipe Co., supra*, 411 F.2d at 1004–1007.

■ The opposition clause, on the other hand, serves a more limited purpose. Moreover, it is more narrow by its terms, being limited to opposition to "any practice made an unlawful employment practice." Arguably, its protection could be said to be limited to cases where the employer has in fact engaged in an unlawful employment practice. Such a narrow interpretation, however, would not only chill the legitimate assertion of employee rights under Title VII but would tend to force employees to file formal charges rather than seek conciliation or informal adjustment of grievances. We agree with the views expressed by the court in *Hearth v. Metropolitan Transit Commission*, 436 F.Supp. 685, 688–689 (D.Minn.1977):

But this Court believes that appropriate informal opposition to perceived discrimination must not be chilled by the fear of retaliatory action in the event the alleged wrongdoing does not exist. It should not be necessary for an employee to resort immediately to the EEOC or similar State agencies in order to bring complaints of discrimination to the attention of the employer with some measure of protection. The resolution of such charges without governmental prodding should be encouraged.

The statutory language does not compel a contrary result. The elimination of discrimination in employment is the purpose behind Title VII and the statute is entitled to a liberal interpretation. When an employee reasonably believes that discrimination exists, opposition thereto is opposition to an employment practice made unlawful by Title VII even if the employee turns out to be mistaken as to the facts.[3]

The same interpretation has been adopted by the EEOC. *See, also, Doe v. AFL–CIO*, 405 F.Supp. 389 (N.D.Ga.1975) *aff'd.*, 537 F.2d 1141 (5th Cir. 1976); Schlei and Grossman, *supra*, 428–429. It is consistent with a liberal construction of Title VII to implement the Congressional purpose of eliminating discrimination in employment.[4]

■ The trial court found that Sias had been discharged for writing a letter to the Regional Administrator of HUD complaining about hiring practices and job conditions. The court further found the discharge to have racial implications because Sias complained of discrimination against him and other Mexican-Americans in employment and promotion. Although the court made no explicit finding that Sias'

---

**3.** A similar interpretation is suggested by implication but without discussion in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 796, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). But see, *Emporium Capwell Co. v. Western Additional Community Org.*, 420 U.S. 50, 71 n.25, 95 S.Ct. 977, 989, 43 L.Ed.2d 12 (1975): "[W]hether the protection afforded by § 704(a) (2000e–3(a)) extends only to the right of access or well beyond it, however, is not a question properly

presented by these cases." District court decisions cited in support of an interpretation contrary to that adopted in *Hearth* do not appear to us to be persuasive for the reasons set forth in the *Hearth* opinion. See, also, Schlei and Grossman, *supra*, 428–429.

**4.** The legislative history sheds no light on Congress' intention behind the opposition clause. *See, e. g.*, 110 Cong.Rec. 7213 (1964).

opposition was based on a reasonable belief that the City's employment practices violated Title VII, such a finding is implicit here.[5] We therefore affirm the judgment of liability.

## II

### Did the Trial Court Err in Finding That It Could Not Order Reinstatement?

■ Sias contends, and the City concedes,[6] that the trial court erred in concluding that Sias' failure to request reinstatement in his complaint barred the court from considering such relief. Under Rule 54(c), Federal Rules of Civil Procedure,

[E]very final judgment shall grant the relief to which the party in whose favor it is rendered is entitled, even if the party has not demanded such relief in his pleadings.

In an action under 42 U.S.C. § 2000e, it is within the discretion of the trial court to order reinstatement of a wrongfully discharged employee. *Taylor v. Safeway Stores, Inc.*, 524 F.2d 263 (10th Cir. 1975). The case must therefore be remanded for consideration of the reinstatement issue.

## III

### Did the Trial Court Err in Limiting Its Award of Back Pay?

Sias seeks back pay for a period beginning in September 1965. However, 42 U.S.C. § 2000e-5 specifically provides that back pay shall not accrue from a date more than two years prior to the filing of the EEOC charge, filed in this case in August, 1972. The trial court could have awarded back pay for a period of approximately four and one-half years covering the period from June 21, 1972, the date of Sias' discharge, through January 18, 1977, the date of judg-

ment. It concluded, however, that the circumstances of this case justified an award of back pay for a period of only two and one-half years following the wrongful discharge. The issue thus presented is whether the trial court exceeded the limits of its discretion.

■ Although an award of back pay in a Title VII action is within the discretion of the trial court,[7] it is clear that "given a finding of unlawful discrimination, backpay should be denied only for reasons which, if applied generally, would not frustrate the central statutory purposes of eradicating discrimination throughout the economy and making persons whole for injuries suffered through past discrimination." *Albermarle Paper Co. v. Moody*, 422 U.S. 405, 421, 95 S.Ct. 2362, 2373, 45 L.Ed.2d 280 (1975). This dual purpose is not inconsistent with the injured party's traditional duty to mitigate damages, nor does it in any way relieve him of this duty. Indeed, 42 U.S.C. § 2000e-5(g) provides, in part, that: "*interim earnings or amounts earnable with reasonable diligence* by the person or persons discriminated against *shall* operate to *reduce the back pay otherwise allowable.*" (emphasis added).

■ The burden of proving a failure to mitigate damages in an employment discrimination suit is on defendant. *Kaplan v. Intern. Alliance of Theatrical, etc.*, 525 F.2d 1354, 1363 (9th Cir. 1975). To satisfy this burden, defendant must establish (1) that the damage suffered by plaintiff could have been avoided, *i. e.* that there were suitable positions available which plaintiff could have discovered and for which he was qualified; and (2) that plaintiff failed to use reasonable care and diligence in seeking such a position. *See Kaplan v. Intern. Alli-*

---

**5.** Ample record support for such a finding is found in Sias' testimony to the effect that the CDA selectively applied a one-step promotion limitation rule, maintained an outside eligibility list for promotions, did not announce openings for promotion, and employed a disproportionately low number of Mexican-Americans at the Central Office. While the record thus supports the inferential finding that Sias acted upon the

reasonable belief that these practices existed, we are not suggesting here that they in fact did.

**6.** Brief for the City, at 55–56.

**7.** Thus mathematical certainty in the computation of a back pay award is not required. *Kaplan v. Intern. Alliance of Theatrical, etc.,* 525 F.2d 1354, 1362 (9th Cir. 1975).

ance of *Theatrical, etc., supra,* 525 F.2d at 1363; *Sparks v. Griffin,* 460 F.2d 433, 443 (5th Cir. 1972); *Hegler v. Board of Ed. of Bearden School District, Bearden, Ark.,* 447 F.2d 1078, 1081 (8th Cir. 1971); *E. E. O. C. v. Kallir, Philips, Ross, Inc.,* 420 F.Supp. 919, 926 (S.D.N.Y.1976), *aff'd.,* 559 F.2d 1203 (2nd Cir. 1977).

■ The trial court concluded that "after his discharge Sias spent only minimal efforts to mitigate damages by seeking other comparable employment and largely devoted his time and talents to the furtherance of the instant lawsuit." In the absence of findings conforming to the *Kaplan* standard, it cannot be determined whether the court applied that standard in concluding that Sias' efforts to mitigate had been minimal. Remand on this issue is therefore required. On remand, the City should be afforded an opportunity, if it desires, to sustain its burden of proving that suitable employment was available for Sias but that he failed to make reasonable efforts to obtain it.[8]

## IV

The remaining claims raised by Sias and the City's cross-appeal have been considered and found to be without merit.

The appeal is remanded for further proceedings consistent herewith.

---

**8.** The district court also denied plaintiff's request to be reimbursed for $250 paid to an attorney for assistance in preparing the complaint. Having in mind that plaintiff appeared in propria persona, that no evidence was presented to support the reasonableness of the charge, and that the trial court found the complaint to be poorly drafted, the denial cannot be found to be an abuse of discretion.