Stephen D. LEARNED,
Plaintiff–Appellant,

v.

CITY OF BELLEVUE,
Defendant–Appellee.

No. 87–3825.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Feb. 2, 1988.

Decided Nov. 3, 1988.

Robert Schmitt, Seattle, Wash., for plaintiff-appellant.

Richard L. Kirkby, Janet E. Garrow, City of Bellevue, Bellevue, Wash., for defendant-appellee.

Before FLETCHER and PREGERSON,* Circuit Judges, and GEORGE,** District Judge.

* The Honorable Harry Pregerson, United States Circuit Judge, U.S. Court of Appeals for the Ninth Circuit, was drawn to replace Judge Anderson, who was on the original panel but died before this opinion was filed.

** The Honorable Lloyd D. George, United States District Judge, District of Nevada, sitting by designation.

GEORGE, District Judge:

Learned appeals the grant of summary judgment in favor of his employer, the City of Bellevue (Bellevue), on Learned's claims under the Civil Rights Act of 1871, 42 U.S.C. § 1983, Title VII of the Civil Rights Act of 1964, section 704(a), 42 U.S.C. 2000e–3(a), and the fourteenth amendment to the United States Constitution. We conclude that summary judgment was proper and affirm the judgment.

## FACTS AND PROCEEDINGS BELOW

Learned has been employed by the City of Bellevue in the Parks and Recreation Department since 1975. In 1977, Learned was promoted to "crew leader" where he supervised three to ten persons responsible for the maintenance of street trees. Learned enjoyed favorable employment evaluations and a positive working relationship with his superiors.

In May 1978, Learned was stabbed by a co-worker while in the course of his employment. Learned suffered serious injuries requiring hospitalization and plastic surgery, for which he received industrial insurance medical benefits from the State of Washington. Learned returned to work in June 1978, and in October 1980, his industrial insurance claim was closed. In September 1982, however, Learned sought to re-open his claim. Learned sued his employer for "excess damages" under an industrial insurance statute. The action would have required proof of intentional injury on behalf of Learned's employer, but the suit was ultimately dismissed as untimely.

Soon after filing suit, Learned experienced "problems" at work. Learned was assigned a new supervisor who was dissatisfied with Learned's work. Learned was allegedly harassed with charges of negligence and misconduct and given special rules regarding breaks. His responsibilities as crew leader were dramatically decreased. Learned developed an ulcer and began to see a psychiatrist. His employer

thereafter allegedly harassed him about his medical appointments and made a special rule for Learned regarding notice and documentation of all medical appointments. In addition, Learned alleged that his supervisors referred to him as "crazy" or "sick" when conversing with co-workers.

In October 1982, Learned filed a complaint with the Washington Human Rights Commission (HRC) alleging discrimination on the basis of physical and mental limitations in violation of state law. He also charged retaliatory conduct, but later withdrew that charge. At the bottom of the complaint, Learned checked a box that said:

"I also allege a violation of Title VII of the Civil Rights Act of 1964 and request that this Complaint be filed with the U.S. Employment Opportunity Commission."

When Learned's supervisors continued to "harass" him and treat him differently than they did other employees, Learned filed a second complaint with the state HRC alleging retaliatory conduct for Learned's having filed the first HRC complaint and his suit for excess damages. Again, Learned checked the box with the provision quoted above. In November 1983, Learned filed a third complaint with the HRC alleging retaliatory conduct and checking the box quoted above. Three months later, Learned "voluntarily" transferred to the ballfield maintenance division where his title and salary have remained the same, but his responsibilities have diminished.

In April 1984, following an investigation of the matter, the HRC found reasonable cause to believe that Learned's allegations were true.[1] Learned did not pursue the matter by filing a charge with the Equal Employment Opportunity Commission (EEOC), and apparently the HRC never forwarded a copy of Learned's complaint to the EEOC as requested on the HRC form complaint. Consequently, Learned never received a right-to-sue letter from the EEOC. Nevertheless, Learned thereafter

---

1. Through discovery, Learned obtained evidence that Bellevue was attempting to "build a case" against and "dump" him because he was "irrational" and had become a "liability" to Bellevue.

filed this action in the United States District Court for the Western District of Washington.

Learned alleged that Bellevue discriminated against him in violation of section 704(a) of Title VII, 42 U.S.C. 2000e–3,[2] and deprived him of his civil rights under the fourteenth amendment in violation of 42 U.S.C. 1983. The district court granted Bellevue's motion for summary judgment because the court found that the evidence did not support a deprivation of due process or equal protection, or a viable claim under Title VII. Because the summary judgment pertained to all federal claims alleged in the complaint, the court dismissed Learned's pendent claims for relief. Learned does not challenge the dismissal of his pendent state claims.

## DISCUSSION

We review a grant of summary judgment *de novo*. *Salgado v. Atlantic Richfield Co.*, 823 F.2d 1322, 1324 (9th Cir.1987). Viewing the evidence in the light most favorable to the nonmoving party, we must determine whether there is a genuine issue as to any material fact and, if not, whether the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c); *Idaho v. Hodel*, 814 F.2d 1288, 1292 (9th Cir.), *cert. denied sub nom. Coeur D'Alene Tribe of Indians v. Idaho*, — U.S. —, 108 S.Ct. 159, 98 L.Ed.2d 114 (1987).

## I. TITLE VII

Bellevue argued for the first time on appeal that Learned's Title VII claims are barred because Learned did not file a complaint with and did not receive notice of a right-to-sue from the EEOC as required under 42 U.S.C. section 2000e–5(e) and (f)(1). Learned's failure to comply with the statutory prerequisites may or may not affect jurisdiction under Title VII. *See Zipes v. Trans World Airlines, Inc.*, 455 U.S. 385, 393, 102 S.Ct. 1127, 1132, 71 L.Ed. 2d 234 (1982) (filing a timely charge of

discrimination with the EEOC is not a jurisdictional prerequisite to suit against a private-sector employer in federal court, but a requirement that, like a statute of limitations, is subject to waiver, estoppel and equitable tolling); *accord EEOC v. Nevada Resort Ass'n*, 792 F.2d 882, 887 (9th Cir. 1986); *but see McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 798, 93 S.Ct. 1817, 1822, 36 L.Ed.2d 668 (1973) (filing charges with the EEOC and receiving notice of the right-to-sue are jurisdictional prerequisites to filing suit in federal court); *Baldwin Co. Welcome Center v. Brown*, 466 U.S. 147, 152 n. 6, 104 S.Ct. 1723, 1726 n. 6, 80 L.Ed.2d 196 (1984) (per curiam) (the Court did not declare in *Zipes* that the EEOC filing requirement need not ever be satisfied, but rather held that timely filing is subject to waiver and tolling); *see also Jones v. Truck Drivers Local Union No. 299*, 748 F.2d 1083, 1086 (6th Cir.1984) (filing a complaint with the EEOC is a necessary, jurisdictional prerequisite to suit in federal court; only the timeliness of the filing may be waived or tolled); *Worrell v. Uniforms to You & Co.*, 673 F.Supp. 1461, 1462–64 & 1462 n. 3 (N.D.Cal.1987) (*Zipes* governs the time requirement, not the exhaustion requirement); *accord Hrivnak v. First of Michigan Corp.*, 617 F.Supp. 990, 990–92 (E.D.Mich.1985); *Bennett v. Russ Berrie and Co.*, 564 F.Supp. 1576, 1580 (N.D.Ind.1983); *Perez v. Dana Corp.*, 545 F.Supp. 950, 952–53 (E.D.Penn.1982), *aff'd on other grounds*, 718 F.2d 581 (3d Cir. 1983). While we may consider jurisdictional issues raised for the first time on appeal, *Csibi v. Fustos*, 670 F.2d 134, 136 n. 3 (9th Cir.1982), we need not decide the issue in this case because we determine in any event that Learned did not produce evidence of, much less allege, a cognizable claim under Title VII.

Learned contends that the district court erred in granting summary judgment on his "claim" under the anti-retaliation provision of Title VII, section 704(a), 42 U.S.C.

---

**2.** Bellevue contends that Learned did not allege a claim for relief under Title VII. While the allegations are certainly equivocal, a liberal construction of the complaint with the incorporated HRC complaints supports Learned's position that he alleged a claim, however, deficient, under Title VII, and that Bellevue had sufficient notice thereof.

2000e–3. Section 704(a) provides in pertinent part:

(a) It shall be an unlawful employment practice for an employer to discriminate against any of his employees ... because he has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter.

42 U.S.C.A. 2000e–3 (West 1981). Learned contends that his employer's conduct violated both the "opposition clause" and the "participation clause" contained in section 704(a).

### A. *The "Opposition Clause"*

■ Although courts liberally construe the provisions of section 704(a) to effectuate the remedial purposes of the Act, *see, e.g., Sias v. City Demonstration Agency,* 588 F.2d 692, 695 (9th Cir.1978), the opposition clause, by its terms, protects only those employees who oppose what they reasonably perceive as discrimination *under the Act.* An employee need not establish that the opposed conduct in fact violated the Act in order to establish a valid claim of retaliation. *Id.* That is, an employee may fail to prove an "unlawful employment practice" and nevertheless prevail on his claim of unlawful retaliation. However, the opposed conduct must fairly fall within the protection of Title VII to sustain a claim of unlawful retaliation. *Silver v. KCA, Inc.,* 586 F.2d 138, 142 (9th Cir.1978) ("under the clear language of the "opposition" clause of [section] 704(a), a case of retaliation has not been made out unless the "retaliation" relates to the employee's opposition to a [section] 703 violation"); *see also Sias,* 588 F.2d at 695–96 ("[a]lthough the [district] court made no explicit finding that Sias' opposition was based on a reasonable belief that the City's employment practices violated Title VII, such a finding is implicit here") (footnote omitted).

■ Learned did not allege that he ever opposed any discrimination based upon race, color, religion, sex, or national origin. Any retaliation in this case related to Learned's having filed a claim for "excess damages" under state industrial insurance laws and Learned's opposition to what he believed was discrimination based upon physical and mental limitations only. Learned could not reasonably have believed that Bellevue discriminated against him in violation of Title VII, and therefore, he cannot claim that he was retaliated against for opposing discrimination prohibited by Title VII.

### B. *The "Participation Clause"*

The participation clause is broadly construed to protect employees who utilize the tools provided by Congress to protect their rights. *Sias,* 588 F.2d at 695. As with the opposition clause, it is not necessary to prove that the underlying discrimination in fact violated Title VII in order to prevail in an action charging unlawful retaliation. *Id.* "If the availability of that protection were to turn on whether the employee's charge were ultimately found to be meritorious, resort to the remedies provided by the Act would be severely chilled." *Id.* (citation omitted).

■ The mere fact that an employee is participating in an investigation or proceeding involving charges of some sort of discrimination, however, does not automatically trigger the protection afforded under section 704(a); the underlying discrimination must be reasonably perceived as discrimination prohibited by Title VII. *See generally,* G. Rutherglen, *Major Issues in the Federal Law of Employment Discrimination* 47–48 (Federal Judicial Center 1987). Thus, even if the filing of Title VII charges with a state agency such as the HRC could be construed as participation in an investigation, proceeding, or hearing under Title VII, *see Hicks v. Abt Assocs.,* 572 F.2d 960, 968–69 (3d Cir.1978), the HRC filing does not fall within the protection of 704(a) in this case because Learned did not allege discrimination prohibited by Title VII. Because Learned did not produce any evidence of, or even allege, a valid Title VII claim, we conclude that the district court

properly granted summary judgment as to this claim.

## II. SECTION 1983

■ To establish liability under 42 U.S.C., section 1983, a plaintiff must demonstrate 1) that the defendant acted under color of state law, and 2) that the defendant deprived the plaintiff of a right secured by the Constitution or laws of the United States. 42 U.S.C.A. 1983 (West 1981). A municipality may be liable under section 1983 when a city employee violates some federally protected right while implementing or executing a policy, statement, ordinance, regulation, or decision officially adopted and promulgated by city officials. *Monell v. New York Dept. of Soc. Serv.,* 436 U.S. 658, 690–91, 98 S.Ct. 2018, 2035–36, 56 L.Ed.2d 611 (1978).

Learned based his section 1983 claims upon the purported violation of Title VII and alleged violations of the fourteenth amendment to the United States Constitution. Because we determine that Learned did not produce evidence that would support any of the claimed violations, we need not decide whether Learned's superiors acted pursuant to some official city policy.

### A. *Title VII Predicate*

■ Had Learned's discrimination and retaliation claims been cognizable under Title VII, he probably could not have pursued section 1983 claims based upon the same discriminatory and retaliatory acts. Violation of rights *created* by Title VII cannot form the basis of section 1983 claims. *See Great Am. Fed. Sav. & Loan Ass'n v. Novotny,* 442 U.S. 366, 378, 99 S.Ct. 2345, 2352, 60 L.Ed.2d 957 (1979). However, since Learned did not demonstrate a violation of any rights under Title VII, we need not consider that statute's preclusive effect. Instead, we may proceed to consider the section 1983 claims that are predicated on the fourteenth amendment.

### B. *Fourteenth Amendment Predicate*

Learned contends that Bellevue deprived him of property and liberty without due process of law, citing only one case in support of his position: *Owen v. City of Independence,* 445 U.S. 622, 100 S.Ct. 1398, 63 L.Ed.2d 673 (1980). No property interest was involved in *Owen.* However, in dicta, the Supreme Court agreed with the Eighth Circuit's conclusion that the plaintiff was deprived of liberty without due process of law when the plaintiff's employer terminated and publicly stigmatized the plaintiff, damaging his reputation in the community, without notice or an opportunity to clear his good name. *Id.* at 633 n. 13, 100 S.Ct. at 1406 n. 13.

■ We have recognized that, in certain circumstances, injury to reputation may implicate a constitutional liberty interest. *See Fleming v. Department of Public Safety,* 837 F.2d 401, 409 n. 10 (9th Cir. 1988). However, we have limited such recognition to those instances "where an employee has been dismissed, and the reasons for dismissal have so stigmatized the person that his other employment opportunities have been jeopardized." *Id.; Clemente v. United States,* 766 F.2d 1358 at 1366 (9th Cir.1985); *see also Paul v. Davis,* 424 U.S. 693, 710–12, 96 S.Ct. 1155, 1164–66, 47 L.Ed.2d 405 (1976) (defamatory remarks, unless accompanied by employment termination or a "significant alteration of status," do not violate the fourteenth amendment).

The facts in this case are not nearly as egregious as those in *Owen,* and as a matter of law do not constitute a deprivation of liberty. Learned is still employed by Bellevue's Parks and Recreation Department. He maintains the same salary and title that he enjoyed before the events leading to this action. Learned's supervisors did not "publicly" stigmatize Learned; any defamatory remarks that may have been made did not go beyond others employed by the Department and would not interfere with Learned's liberty to pursue the career of his choice. Therefore, Learned's liberty claim must fail.

■ Learned did not produce any evidence that he had a protected "property interest" in his employment, and therefore, he cannot claim that he was denied proper-

ty without due process of law. *See Merritt v. Mackey*, 827 F.2d 1368, 1370–71 (9th Cir.1987); *see also McAdoo v. Lane*, 564 F.Supp. 1215, 1221 (N.D.Ill.1983), *aff'd without opinion, McAdoo v. Thomas*, 774 F.2d 1168 (7th Cir.1985) (because plaintiff had a protected property interest in his employment, he could pursue his claim that he was deprived of property without due process of law when his superiors harassed him until he gave up his job).

Learned did not specifically challenge the district court's ruling that there was no evidence of any violation of equal protection under the fourteenth amendment, nor has he ever cited any authority in support of an equal protection claim. In any event, we agree with the district court that Learned did not produce any evidence to support an equal protection claim. Summary judgment was therefore proper as to Learned's section 1983 claims.

### III. ATTORNEYS' FEES

We do not believe that this appeal was entirely frivolous or taken in bad faith, and therefore deny Bellevue's request for attorneys' fees. *See Jensen v. Stangel*, 762 F.2d 815, 817 (9th Cir.1985) (per curiam) (prevailing defendant in a section 1983 action may be awarded attorneys' fees if the action was frivolous, unreasonable, or without foundation); *Silver*, 586 F.2d at 143 (prevailing defendant in a Title VII appeal not entitled to attorneys' fees where the appeal was taken in good faith and the defendant was able to pay its own way).

### CONCLUSION

Learned did not produce any evidence which could establish a violation of any rights under Title VII or any protected interest under section 1983. All other issues were either without merit or were not raised below. Accordingly, the judgment of the district court is AFFIRMED.