

2006 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

1-12-2006

# Slagle v. Clarion

Precedential or Non-Precedential: Precedential

Docket No. 04-2622

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2006

Recommended Citation

"Slagle v. Clarion" (2006). *2006 Decisions.* Paper 1681.
http://digitalcommons.law.villanova.edu/thirdcircuit_2006/1681

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2006 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

———

No. 04-2622

———

TIMOTHY A. SLAGLE,
                          Appellant

v.

COUNTY OF CLARION;
CLARION COUNTY JAIL

———

On Appeal from the United States District Court
for the Western District of Pennsylvania
(D.C. Civil No. 02-cv-00960)
District Judge:  Hon. Terrence F. McVerry

———

Argued July 14, 2005

Before:  SLOVITER, McKEE and WEIS, Circuit Judges

(Filed:    January 12, 2006)

———

Neal A. Sanders      (Argued)
Law Offices of Neal Alan Sanders
1924 North Main Street Extension
Route 8 North
Butler, PA 16001

        Attorney for Appellant

Louis C. Long
Marie Milie Jones     (Argued)
Meyer, Darragh, Buckler, Bebenek & Eck, P.L.L.C.
U.S. Steel Tower, Suite 4850
600 Grant Street
Pittsburgh, PA 15219

Attorneys for Appellees

OPINION OF THE COURT

SLOVITER, Circuit Judge.

Timothy A. Slagle, a former correctional officer at the Clarion County Jail in Pennsylvania, appeals from the Order of the District Court granting summary judgment in favor of his employer, the County of Clarion, and dismissing Slagle's claims of retaliatory discharge in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-3a, and the Pennsylvania Human Relations Act ("PHRA").[1]  We review a grant of summary judgment de novo, applying the same standard as did the district court.  Antonelli v. New Jersey, 419 F.3d 267, 272 (3d Cir. 2005).

**I.**

Slagle was employed as a correctional officer at the Clarion County Jail ("Jail") from October 1996 to February 2002.  Several separate incidents are relevant to the issue before us.  In April 2001, Slagle, using testing material belonging to the Jail, gave himself an HIV test at his home and submitted the test to the Pennsylvania Department of Health for analysis without

_____

[1]  Slagle also raises a claim of hostile work environment. Because Slagle mentions this claim only once in his brief and only in passing, we hold that Slagle waived the claim.  See Laborer's Int'l Union v. Foster Wheeler Corp., 26 F.3d 375, 398 (3d Cir. 1994) (finding an issue waived because "passing reference to an issue . . . will not suffice to bring that issue before this court") (citation omitted).

identifying the subject of the test. The Pennsylvania Department of Health mailed the results of the anonymous test back to the Jail. Deputy Warden Traister, who received the results of the test, assumed that the test had been administered to an inmate. Because he had not authorized any HIV testing of inmates, he began an internal investigation to determine who had conducted the unauthorized HIV test. Slagle refused to cooperate with the investigation but, at a hearing held subsequently, he admitted that he was the subject of the test.

In a separate incident that occurred on May 11, 2001, Slagle allegedly told the officer in charge who was on duty that a state trooper had engaged in inappropriate behavior during an inmate interview. Later that day Warden John Rowley accused Slagle of going outside the chain of command by threatening to report the trooper's behavior to his supervisor. Slagle denied making any such threat. By letter dated May 14, 2001, Slagle received a one-day suspension for his failure to cooperate with the deputy warden's investigation of the HIV test and for his May 11 "threat" to go outside the chain of command. In addition, Slagle received a two-week suspension without pay in July, 2001, for making inappropriate comments to a female inmate and sexually harassing a female correctional officer.

On September 10, 2001, Slagle filed a complaint against Clarion County with the Equal Employment Opportunity Commission ("EEOC") in connection with his May 2001 and July 2001 suspensions. In the complaint, Slagle stated: "the Respondent discriminated against me because of whistleblowing, in violation of my Civil Rights, and invasion of privacy." App. at 96. By letter dated October 31, 2001, the EEOC notified Slagle that it dismissed his charge because "the facts [he] alleg[ed] failed to state a claim under any of the statutes enforced by the Commission." App. at 14.

On January 2, 2002, Slagle was advised that he was being discharged from his position at the Jail for gross insubordination and for allegedly lying that he had not received notice of the denial of his request to have a vacation day on December 25, 2001, and for not working on that day pending a Loudermill

hearing.[2] Slagle filed a union grievance in January related to his discharge, which he withdrew a week later. Slagle filed a second charge with the EEOC on January 15, 2002, alleging that his employment was terminated in retaliation for having filed the September 2001 EEOC charge.

Approximately two weeks later, the Director of Finance and Human Resources for Clarion County advised Slagle that Clarion County had determined that he would not be terminated. Instead, he would be suspended without pay through February 2, 2002, but would not lose seniority or other benefits during the suspension. Nonetheless, Slagle never returned to work after January 2, 2002.

On February 8, 2002, Slagle filed a third charge with the EEOC in which he asserted that Clarion County discriminated against him "because of [his] gender, male, in violation of Title VII as to gender discrimination and the PHRA." App. at 129. The EEOC notified Slagle that his complaint was dismissed because "the Commission [was] unable to conclude that the information obtained establish[ed] violations of the statutes." App. at 12.

Slagle thereafter filed this lawsuit on May 29, 2002, against Clarion County in the United States District Court for the Western District of Pennsylvania, alleging that his termination was a result of unlawful retaliation in violation of Title VII.[3]

---

[2] In Cleveland Board of Education v. Loudermill, 470 U.S. 532 (1985), the Supreme Court held that a public employee is entitled to a "pretermination hearing [that] need not definitively resolve the propriety of the discharge. It should be an initial check against mistaken decisions-- essentially, a determination of whether there are reasonable grounds to believe that the charges against the employee are true and support the proposed action." Id. at 545-46.

[3] The District Court dismissed Clarion County Jail as a defendant in this case, stating "it is well established in the Third Circuit that a prison is not a 'person' subject to suit under federal civil rights laws." Slagle v. County of Clarion and Clarion County

4

Slagle alleges that after he filed his charge with the EEOC in September 2001, he was subject to antagonism at the workplace in the form of unwarranted work criticism, cancellation of a previously scheduled vacation, and unwarranted disciplinary action. He expounds on his complaint by asserting in his brief that he was "excluded from participating in inmate hearings while less experienced correctional officers were selected . . . [and he] began to be reprimanded for minor items . . . that other correctional officers engaged in without being criticized[.]" Appellant's Br. at 6-7.

The District Court granted summary judgment for Clarion County. It applied the framework established by the Supreme Court in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973), and held that Slagle had failed to establish a prima facie case. The District Court stated that Slagle "failed to establish that he engaged in protected activity, which is an essential element of a prima facie case of retaliation under Title VII." App. at 41. Slagle appeals.

## II.

In reviewing the grant of summary judgment, we must view "the underlying facts and all reasonable inferences therefrom in the light most favorable to the party opposing the motion." In re Flat Glass Antitrust Litig., 385 F.3d 350, 357 (3d Cir. 2004). Summary judgment is appropriate where there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c).

To prevail on a claim of retaliatory discharge in violation of Title VII and the analogous provision of the PHRA,[4] Slagle

Jail, No. 02-0960 (W.D. Pa. filed March 6, 2003).

[4] In pertinent part, the PHRA states:

It shall be an unlawful discriminatory practice . . . [f]or any person, employer, employment agency or labor organization to discriminate in any manner

5

must demonstrate that: 1) he engaged in conduct protected by Title VII; 2) his employer took an adverse action against him either after or contemporaneous with the protected activity; and 3) a causal link exists between his protected conduct and the employer's adverse action. Weston v. Pennsylvania, 251 F.3d 420, 430 (3d Cir. 2001).[5]

Slagle argues that the District Court erred in holding that he failed to establish that he engaged in conduct protected under Title VII. Title VII prohibits employers from discriminating on the basis of race, color, religion, sex, or national origin. 42 U.S.C. § 2000e-2. The anti-retaliation provision of Title VII provides, in pertinent part:

> It shall be an unlawful employment practice for an employer to discriminate against any of his employees . . . because he has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter.

> against any individual because such individual has opposed any practice forbidden by this act, or because such individual has made a charge, testified or assisted, in any manner, in any investigation, proceeding or hearing under this act.

43 Pa. Cons. Stat. § 955(d).

[5] This court has stated "'that the PHRA is to be interpreted as identical to federal anti-discrimination laws except where there is something specifically different in its language requiring that it be treated differently.'" Fasold v. Justice, 409 F.3d 178, 184 n.8 (3d Cir. 2005) (quoting Fogleman v. Mercy Hosp., Inc., 283 F.3d 561, 567 (3d Cir. 2002)). The PHRA provisions here at issue contain no such language; therefore, we will interpret the implicated provisions of Title VII and PHRA as applying identically in this case and as being governed by the same set of decisional law.

6

42 U.S.C. § 2000e-3(a) (emphasis added).

Slagle argues that filing a charge with the EEOC constitutes protected activity under the participation clause, which protects an employee who has "made a charge [or otherwise] participated . . . in an investigation . . . under this subchapter." He asserts that he engaged in protected activity when he filed a charge alleging "unspecified civil rights violations." Appellant's Br. at 14.

The District Court found that Slagle had only made general complaints of unfair treatment. Relying on this court's decision in Barber v. CSX Distribution Services, 68 F.3d 694, 701-02 (3d Cir. 1995), the District Court stated that "a general complaint of unfair treatment does not translate into a charge of illegal discrimination, and is not protected conduct under Title VII." Slagle v. County of Clarion, No. 02-0960, slip op. at 6 (W.D. Pa. May 13, 2004).

In Barber, the plaintiff, who was an employee of the defendant, wrote a letter to the defendant's Human Resources Department complaining that an available position had been awarded to a less-qualified person. The plaintiff's position was eliminated soon thereafter, and he filed a suit alleging that his position had been eliminated to retaliate for the letter of complaint and that this retaliation violated the Age Discrimination in Employment Act ("ADEA"). Barber's claim was based on the "opposition clause" of the ADEA, section 704(a), which protects from retaliation employees who oppose any practice made unlawful by Title VII. See 29 U.S.C. § 623(d). The District Court had entered judgment for the employer following a jury verdict for Barber, but this court reversed, holding that defendant's failure to promote Barber violated the ADEA. On the other hand, we affirmed the dismissal of the retaliation claim because Barber's letter to defendants' Human Resources Department did not specifically complain about age discrimination and therefore did "not constitute the requisite 'protected conduct' for a prima facie case of retaliation." 68 F.3d at 701-02. The ADEA's provision against retaliatory discharge is identical to that of Title VII. The defect with Barber's retaliation claim was that he never

7

explicitly claimed that he was discriminated against on the basis of age.

In contrast to Barber's claim of unlawful retaliatory discharge which was based on the "opposition clause" of the ADEA, Slagle's claim arises under the "participation clause" of Title VII. Commentators have noted that "[i]t is essential to the analysis of § 704(a) to recognize its two different clauses. . . . The distinction is significant because the levels of statutory protection differ." Barbara L. Schlei & Paul Grossman, Employment Discrimination Law 533 (2d ed. 1983); see also Proulx v. Citibank, 659 F. Supp. 972 (S.D.N.Y. 1987) (same); cf. Robinson v. Southeastern Pa. Transp. Auth., 982 F.2d 892, 896 n.4 (3d Cir. 1993) (noting that courts have distinguished between the activities protected by the two clauses of 42 U.S.C. § 2000e-3(a)).

Courts that have interpreted the "participation clause" have held that it offers much broader protection to Title VII employees than does the "opposition clause." See, e.g., Deravin v. Kerik, 335 F.3d 195, 203 (2d Cir. 2003) ("[C]ourts have consistently recognized [that] the explicit language of § 704(a)'s participation clause is expansive and seemingly contains no limitations."); Booker v. Brown & Williamson Tobacco Co., 879 F.2d 1304, 1312 (6th Cir. 1989) (noting that "courts have generally granted less protection for opposition than for participation" and that the participation clause offers "exceptionally broad protection"); Sias v. City Demonstration Agency, 588 F.2d 692, 695 (9th Cir. 1997) (stating that the opposition clause serves "a more limited purpose" and is narrower than the participation clause); Pettway v. American Cast Iron Co., 411 F.2d 998, 1006 n.18 (5th Cir. 1969) (noting that the participation clause provides "exceptionally broad" protection for employees covered by Title VII).

The question before us, one of first impression, is whether the participation clause of section 704(a) protects an employee who files a facially invalid claim for retaliatory discharge.

It is well-settled that "[t]he first step in interpreting a statute is to determine whether the language at issue has a plain

and unambiguous meaning with regard to the particular dispute in the case." United States v. Cooper, 396 F.3d 308, 310 (3d Cir. 2005) (internal quotation marks and citation omitted).  As noted, the statute provides: "[i]t shall be an unlawful employment practice for an employer to discriminate against any of his employees . . . because he has made a charge . . . under this subchapter." 42 U.S.C. § 2000e-3(a).  The language at issue has a clear and unambiguous meaning.  An employee filing a charge is protected only if the charge is brought under "this subchapter." The phrase "this subchapter" refers specifically to 42 U.S.C. §§ 2000e through 2000e-17, the provisions that set forth an employee's rights when an employer has discriminated against him or her on the basis of race, color, sex, religion, or national origin.  It follows that a charge "under this subchapter" is a charge that alleges discrimination on the basis of those prohibited grounds.

Slagle's argument that an employee is protected when s/he files any charge, regardless of its content, is to render the phrase "under this subchapter" meaningless.  Such an interpretation is contrary to the accepted rules of statutory interpretation.  See Cooper, 396 F.3d at 312 ("It is a well known canon of statutory construction that courts should construe statutory language to avoid interpretations that would render any phrase superfluous."); see also Philip J. Pfeiffer, Employment Discrimination Law 499 (2002) ("The retaliation provisions of [Title VII] do not protect employees from retaliation for filing any charge alleging any misconduct; to gain protection, the charge – factually supported or not – must allege conduct within the scope of the statute.").

Of course, because Title VII is a remedial statute, it must be interpreted liberally.  See, e.g., Bowers v. NCAA, 346 F.3d 402, 431 n.24 (3d Cir. 2003) ("We recognize that [ ]Title VII is clearly remedial civil rights legislation . . . ."); Idahoan Fresh v. Advantage Produce, Inc., 157 F.3d 197, 204 (3d Cir. 1998) (noting that liberal construction of a statute is appropriate where that statute is remedial).  Even if a plaintiff files a complaint with the incorrect agency, but alleges discrimination, s/he is protected by Title VII.  See Hicks v. Abt Assoc., Inc., 572 F.3d 960, 969 (3d Cir. 1978) ("Defendant's

9

interpretation would mean that if the employee first turned to the wrong agency even with a meritorious claim, that employee could be discharged before he was eventually directed to the EEOC. Such an interpretation would undercut the purposes of section 704."). Therefore, we require only that the plaintiff file a formal complaint that alleges one or more prohibited grounds in order to be protected under Title VII. But we cannot dispense with the requirement that the plaintiff allege prohibited grounds.

The result we reach is consistent with that reached in cases from the Fourth and the Ninth Circuit Courts of Appeals addressing the issue of whether § 704(a) protects an employee who files a facially invalid claim of retaliatory discharge. In Learned v. City of Bellevue, 860 F.2d 928, 932 (9th Cir. 1988), the court held that "[t]he mere fact that an employee is participating in an investigation or proceeding involving charges of some sort of discrimination . . . does not automatically trigger the protection afforded under section 704(a) . . . ." The Learned court found that because the plaintiff's complaint did not allege discrimination prohibited by Title VII, he was not protected from the adverse employment actions taken by his employer in response to his complaint.[6] In Balazs v. Liebenthal, 32 F.3d 151, 159-60 (4th Cir. 1994), the court relied on Learned in holding that the plaintiff's retaliation claim failed because, inter alia, the "plaintiff's previous claim[,] the filing of which was alleged to have given rise to the retaliation claim, was not one cognizable under Title VII of the Civil Rights Act of 1964."

Our holding that Slagle's filing of a facially invalid complaint does not constitute "participation" for the purposes of Title VII does not raise the low bar that Title VII sets for employees seeking protection against retaliation. A plaintiff need only allege discrimination on the basis of race, color, religion, sex, or national origin to be protected from retaliatory

---

[6] The plaintiff in Learned had complained to the state of "discrimination on the basis of physical and mental limitations in violation of state law." Learned, 860 F.2d at 930. The Learned court also stated that the participation clause requires that "the underlying discrimination must be reasonably perceived as discrimination prohibited by Title VII." Id. at 932.

discharge under Title VII.  Protection is not lost merely because an employee is mistaken on the merits of his or her claim.  See, e.g., Pettway, 411 F.2d at 1005 (explaining that the participation clause must offer broad protection because individuals draft charges "as best they can without expert legal advice" and often face "a huge industrial employer in this modern day David and Goliath confrontation").  Slagle's complaint, with its vague allegations of "civil rights" violations, did not meet even this low bar.

Once a plaintiff files a facially valid complaint, the plaintiff will be entitled to the broad protections of  § 704(a), as interpreted by the EEOC and by numerous courts.  Section 8-II of the EEOC Compliance Manual states that a plaintiff is protected under the participation clause "regardless of whether the allegations in the original charge were valid or reasonable." See also Johnson v. University of Cincinnati, 215 F.3d 561, 582 (6th Cir. 2000) ("The exceptionally broad protections of the participation clause extends to persons who have participated in any manner in Title VII proceedings . . . .  Protection is not lost if the employee is wrong on the merits of the charge, . . . nor is protection lost if the contents of the charge are malicious or defamatory as well as wrong.") (internal quotation marks and citation omitted); Wyatt v. City of Boston, 35 F.3d 13, 15 (1st Cir. 1994) ("[T]here is nothing [in the wording of the participation clause] requiring that the charges be valid, nor even an implied requirement that they be reasonable.") (citation omitted); Proulx, 659 F. Supp. at 977 (noting that courts give "basically absolute protection for 'participation conduct.'") (citation omitted).  All that is required is that plaintiff allege in the charge that his or her employer violated Title VII by discriminating against him or her on the basis of race, color, religion, sex, or national origin, in any manner.  Slagle did not do so, and therefore he cannot assert a claim for retaliation for filing that charge.

For the reasons set forth, we will affirm the judgment of the District Court.