[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 17-11100
Non-Argument Calendar

_____

D.C. Docket No. 1:15-cv-01115-AT

MOSES LANGFORD,

Plaintiff-Counter Defendant-
Appellant,

versus

MAGNOLIA ADVANCED MATERIALS, INC.,

Defendant-Counter Claimant-
Appellee.

_____

Appeal from the United States District Court
for the Northern District of Georgia

_____

(October 3, 2017)

Before HULL, MARCUS and WILSON, Circuit Judges.

PER CURIAM:

Moses Langford, an African American male, appeals the district court's

grant of summary judgment in favor of his former employer, Magnolia Advanced

Materials, Inc. ("Magnolia"), in his lawsuit alleging racial discrimination and retaliation under Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e-2, 2000e-3(a), and 42 U.S.C. § 1981.  On appeal, Langford argues that: (1) the district court erred in determining that his proffered comparator, his direct supervisor Deborah Nash-Makita, was not similarly situated to him; (2) he established that Magnolia's proffered reasons for terminating him -- breach of contract, theft of intellectual property, insubordination, and poor performance -- were mere pretext for discrimination; and (3) the district court erred in concluding that his filing of an Equal Employment Opportunity Commission ("EEOC") charge was not a protected activity.  After careful review, we affirm.

We review a grant of summary judgment de novo, viewing the evidence in the light most favorable to the non-moving party.  Wilson v. B/E Aerospace, Inc., 376 F.3d 1079, 1085 (11th Cir. 2004).  Summary judgment is proper when there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a).  A genuine factual dispute exists if the jury could return a verdict for the non-movant.  Wilson, 376 F.3d at 1085.  A legal claim or argument not briefed before us is deemed abandoned.  Access Now, Inc. v. Sw. Airlines Co., 385 F.3d 1324, 1330 (11th Cir. 2004).

First, we are unpersuaded by Langford's claim that the district court erred by granting summary judgment on his discrimination claim.  Under Title VII, it is

2

unlawful for an employer to discharge, refuse to hire, or discriminate against any individual because of his race.    42 U.S.C. § 2000e-2(a)(1).    To make a discrimination claim based on circumstantial evidence, the plaintiff must initially establish a prima facie case of disparate treatment, which generally means that: (1) the plaintiff was a member of a protected class; (2) he was qualified to do the job; (3) he was subjected to an adverse employment action; and (4) he was treated less favorably than similarly situated individuals outside his protected class.  Burke-Fowler v. Orange Cty., Fla., 447 F.3d 1319, 1323 (11th Cir. 2006).  If the plaintiff establishes a prima facie case, and the employer articulates a legitimate, nondiscriminatory reason for its actions, the plaintiff must then prove that the employer's reason is a pretext for illegal discrimination.  Id.

In determining whether employees are similarly situated for purposes of assessing a plaintiff's prima facie case, we consider whether the employees are involved in, or accused of, the same or similar conduct and are disciplined in different ways.  Maniccia v. Brown, 171 F.3d 1364, 1368 (11th Cir. 1999).  We require the quantity and quality of the comparator's misconduct to be nearly identical.  Burke-Fowler, 447 F.3d at 1323.  However, a plaintiff's failure to produce a comparator does not necessarily doom the plaintiff's case, if the plaintiff presents a convincing mosaic of circumstantial evidence that would allow a jury to

infer intentional discrimination by the decisionmaker.  Smith v. Lockheed-Martin Corp., 644 F.3d 1321, 1328 (11th Cir. 2011).

Title VII does not take away an employer's right to interpret its rules as it chooses, and to make determinations as it sees fit under those rules.  Nix v. WLCY Radio/Rahall Commc'ns, 738 F.2d 1181, 1187 (11th Cir. 1984).  Nor does Title VII protect against harsh treatment in the workplace or require an employer to have good cause for its decisions.  Id.  An employer may fire an employee for a good reason, a bad reason, a reason based on erroneous facts, or for no reason at all, as long as its action is not for a discriminatory reason.  Id.

Here, there is no genuine dispute of fact indicating that Nash-Makita is a similarly situated comparator with Langford, despite Langford's claim that they both breached Magnolia's Nondisclosure Agreement by sending confidential work information to Langford's personal e-mail account.  For one thing, Nash-Makita and Langford held different positions and had different responsibilities.  Nash-Makita was Langford's direct supervisor, and was in charge of product development, technical support, and quality control, as well as supervising all laboratory employees.  Langford was under Nash-Makita's supervision, and was a senior chemist responsible for product development and testing.  But even if their job responsibilities are not necessarily dispositive, see Rioux, 520 F.3d at 1281, the record is clear that their conduct was not "nearly identical."  See Nix, 738 F.2d at

4

1186. While Nash-Makita sent confidential information to Langford's personal e-mail account, Langford sent confidential information to his own personal e-mail account. And Langford has not disputed Nash-Makita's claim that she sent the confidential information for business purposes -- the office was closed as a result of a snowstorm, and she wanted Langford to be able to receive credit from working at home if he so desired. Langford, in contrast, concedes that he sent at least one document to himself in order to collect evidence to support his retaliation claim (even though he has provided no explanation as to how the e-mail supported his retaliation claim) -- which is undeniably a personal purpose. Richard Wells, the chief executive officer ("CEO") and owner of Magnolia, testified that he considered the misconduct two "different animals" because of this distinction. Indeed, Title VII does not take away Magnolia's right to interpret its Nondisclosure Agreement and its employees' breaches of that contract as it sees fit. See Nix, 738 F.2d at 1187.[1]

---

[1]    Langford's arguments on appeal that we should apply contract law to determine whether Nash-Makita breached the Nondisclosure Agreement are misplaced. The relevant issue is not whether Langford actually breached his contract or whether Magnolia properly found that he breached his contract, but whether Magnolia's termination of him was a result of race discrimination. See Nix, 738 F.2d at 1187. In any event, Magnolia has not argued that Nash-Makita did not breach her contract. Rather, Magnolia has said that the circumstances surrounding her misconduct are different than those surrounding Langford's misconduct, justifying a different punishment. Thus, the starting point of the analysis assumes that both breached the terms of the Nondisclosure Agreement, and therefore violated the same rule. Langford also argues that the district court should not have considered what Magnolia termed "extenuating circumstances" in Nash-Makita's misconduct, because the contract did not recognize extenuating circumstances as an exception to its terms. Again, this argument misses

Langford and Nash-Makita were also not similarly situated because Langford had a history of performance problems, while Nash-Makita did not. Langford concedes that he was required to submit weekly reports, and that he failed to do so at least two times. He claims that the written warning erroneously stated that he failed to provide reports for three weeks, but he signed the warning indicating that the contents were accurate and that he had willfully not completed the reports. Similarly, Langford admitted that he used his company e-mail to conduct personal business during work hours.

In addition, their quantity of misconduct was different.[2] As the record shows, the e-mails that Nash-Makita sent, with the exception of the February 2014 e-mail, were different from the ones Langford sent, because they were sent by third parties to Nash-Makita. As a result, the information in the e-mails was not confidential information known only to Magnolia employees. And even if the Nondisclosure Agreement did not distinguish between forms of confidential information, nothing prevents Magnolia from making this distinction. See Nix, 738 F.2d at 1187. Thus, considering the record as a whole, the undisputed record

_____

the issue, because the relevant question is whether different circumstances surrounded each employee's breach, not whether Magnolia properly interpreted the contract. See id.

[2]    As for Langford's argument that the district court should not have compared the number of e-mails each person sent, we disagree, since we must consider the quantity of misconduct. See Burke-Fowler, 447 F.3d at 1323.

6

indicates that Nash-Makita's and Langford's misconduct was not nearly identical, and that she is not an adequate comparator. See Burke-Fowler, 447 F.3d at 1323.

While the failure to identify a similarly situated comparator would not normally be fatal to Langford's claims, see Smith, 644 F.3d at 1328, Langford presented no argument in his counseled appellate brief that he presented sufficient circumstantial evidence to create a trial issue concerning Magnolia's discriminatory intent. Because he failed to establish a valid comparator and has abandoned the argument he presented sufficient circumstantial evidence suggesting racial discrimination, Access Now, Inc., 385 F.3d at 1330, Langford did not establish a prima facie case of race discrimination. Moreover, because Langford did not establish a prima facie case, it is irrelevant whether he established pretext. See Burke-Fowler, 447 F.3d at 1323. Accordingly, the district court did not err in granting summary judgment on Langford's discrimination claim.

We also are unconvinced by Langford's claim that he engaged in a protected activity when he filed an EEOC charge alleging that he had been discriminated against for complaining about hazardous working conditions. Title VII provides that it shall be an unlawful employment practice for an employer to discriminate against any employee "because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter." 42 U.S.C. § 2000e-3(a). To establish a prima facie case of

retaliation, a plaintiff must show that he engaged in protected activity, suffered an adverse action, and that a causal connection existed between the two. Bryant v. Jones, 575 F.3d 1281, 1307-08 (11th Cir. 2009). "Unfair treatment, absent discrimination based on race, sex, or national origin, is not an unlawful employment practice under Title VII." Coutu v. Martin Cty. Bd. of Cty. Comm'rs, 47 F.3d 1068, 1074 (11th Cir. 1995).

Here, Langford has not established a prima facie case of retaliation because the undisputed record reveals that he did not engage in a protected activity. Langford argues that he was retaliated against for filing an October 2014 EEOC complaint, which alleged that he was being retaliated against for complaining about worker safety. However, § 2000e-3(a) prohibits retaliation for filing a charge "under this subchapter" -- and "this subchapter" makes it unlawful to discriminate based on an individual's race, religion, sex, or national origin. See 42 U.S.C. § 2000e. Notably, it does not make it unlawful to discriminate against someone for complaining about unsafe workplace conditions. And contrary to Langford's argument, several of our sister circuits have held that filing an EEOC charge is not protected activity if the charge does not allege violations of Title VII or § 1981. See Slagle v. Cty. of Clarion, 435 F.3d 262, 267 (3d Cir. 2006) (holding that § 2000e-3(a) protection extended only to charges that alleged discrimination on the basis of race, color, sex, religion, or national origin); Balazs

v. Liebenthal, 32 F.3d 151, 159-60 (4th Cir. 1994) (holding that a retaliation claim failed because the EEOC charge had "nothing to do with his race, color, religion, sex or national origin"); Learned v. City of Bellevue, 860 F.2d 928, 932 (9th Cir. 1988) (holding that § 2000e-3(a) only applied if the charge filed alleged discrimination prohibited by Title VII).  Thus, just as we've held that Title VII does not protect unfair treatment not based on a protected ground, we cannot conclude that Title VII protects a person from discrimination based on the filing of an EEOC charge not based on a protected ground.  See Coutu, 47 F.3d at 1074.  As a result, the undisputed record reveals that Langford did not engage in protected activity, and the district court did not err in granting summary judgment on this claim.

**AFFIRMED**.