

2007 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

1-24-2007

# Chatterjee v. Phila Fedr Teachers

Precedential or Non-Precedential: Non-Precedential

Docket No. 05-4390

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2007

Recommended Citation

"Chatterjee v. Phila Fedr Teachers" (2007). *2007 Decisions.* Paper 1751.
http://digitalcommons.law.villanova.edu/thirdcircuit_2007/1751

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova University School of Law Digital Repository. It has been accepted for inclusion in 2007 Decisions by an authorized administrator of Villanova University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

No. 05-4390

DR. BASANT CHATTERJEE,
                                        Appellant

v.

PHILADELPHIA FEDERATION OF TEACHERS;
SCHOOL DISTRICT OF PHILADELPHIA;
DAVID W. HORNBECK; JEANETTE W. BREWER;
JOYCE B. HARRISON; SHELDON JAHSS;
HENRY PARKS; MICHAEL NEIDERMAN;
JAMES LYTLE; JERRY T. JORDAN;
MAXINE STUTMAN

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
D.C. Civil Action No. 99-cv-4122
(Honorable Louis H. Pollak)

Submitted Pursuant to Third Circuit LAR 34.1(a)
January 18, 2007

Before:  SCIRICA, Chief Judge, FUENTES and SMITH, Circuit Judges

(Filed: January 24, 2007)

OPINION OF THE COURT

PER CURIAM.

Appellant Dr. Basant Chatterjee, proceeding pro se, appeals the judgments of the District Court granting in part Appellees' motions to dismiss his complaint and denying his claims against the School District of Philadelphia ("the District") following a bench trial. For the reasons that follow, we will affirm.

Appellant was employed by the District as a math teacher from 1973-1996. In 1993, while teaching at University City High School, Appellant took on several extra-curricular appointments in addition to his teaching responsibilities. Among them, he became the Director of the Health Small Learning Community. In the spring of 1994, William Shumake became the principal of University City High School. Appellant alleges that during the following term, Principal Shumake began to "harass and discriminate against" him, and that he observed discrimination against Asian students in the school. Appellant subsequently informed the local news media, which reported on the alleged discrimination. In March 1995, Appellant filed a discrimination claim against Principal Shumake with the Pennsylvania Human Relations Commission ("PHRC").

According to Appellant, in late March or early April of 1995, Principal Shumake took a leave of absence from his job and was replaced by Dr. James Lytle, a former Assistant Superintendent of Schools. Shortly thereafter, Dr. Lytle initiated a meeting with Appellant at which he inquired about Appellant's PHRC complaint. Following the meeting, Appellant withdrew the complaint, explaining that the District "has taken

2

necessary steps against the administrator in the complaint." According to Appellant, his relationship with Dr. Lytle from April-June of 1995 was "cordial and satisfactory."

Appellant alleges that, beginning in September 1995, he was subjected to "harassment, intimidation, humiliation and discrimination" at the hands of Dr. Lytle. The factual background underlying these claims is set forth at length in Appellant's second amended complaint. Briefly, Appellant maintains that he was stripped of his authority as program director in favor of his assistant, his performance was evaluated via a survey of other faculty members, he was criticized in his official performance record for failing to address certain schoolwide problems, he was the only faculty member to receive a mid-year performance evaluation, and he was denied compensation for time spent supervising students during their lunch hour and for his extra-curricular work. He alleges that none of the other program directors, all of whom were white, experienced such treatment. He also alleges that he was made the focus of numerous investigations because of his national origin and in retaliation for having previously complained of discrimination.

In the winter of 1995, Dr. Lytle initiated an audit of Appellant's expenditures and compensation. According to his testimony, the audit was prompted by a routine review of W-2's of the employees under his supervision. Dr. Lytle claimed he was struck by Appellant's W-2, which reflected compensation of approximately $27,000 in excess of his base salary, more than any other teacher at the school. Based on the results of the audit, the Office of the Internal Controller concluded that between January and June

3

1995, Appellant received multiple payments for certain hours, and was paid for hours he was not entitled to be paid for, extra-curricular hours on days when he was absent from his regular duties, and time which was not supported by sign-in records.

In response to the audit, Appellant, accompanied by Maxine Stutman, his representative from the Philadelphia Federation of Teachers ("the Federation"), met with District representatives in early February 1996. On February 12, Appellant provided Dr. Lytle with a one-page response to the audit, and sent a letter to the Superintendent requesting a meeting and indicating his intent to file another discrimination complaint with the PHRC. Appellant did not copy Dr. Lytle on his letter to the Superintendent. On March 28, Dr. Lytle conducted a further evaluation and rating of Appellant, in which he determined his performance to be unsatisfactory, and incorporated updated findings from a March 25 report from the Internal Controller's Office. On April 1, Appellant sent a second letter to the Superintendent, referring to his February 12 letter requesting a meeting, and indicating that he had not yet received a response. The Superintendent responded on April 8, copying Dr. Lytle, and stating that he would look into the matter. In the interim, based on the results of the audit and the March 28 evaluation, Dr. Lytle recommended that Appellant be relieved of both his administrative and his teaching responsibilities. On July 18, 1996, after the Assistant Superintendent and the Deputy Superintendent endorsed this recommendation, the District issued a letter to the Board of

4

Education recommending Appellant's termination. Appellant found a copy of this letter waiting for him when he returned from summer vacation on September 1, 1996.

The letter from the Board of Education provided Appellant with two options: (i) to request a hearing before the Board of Education within ten days of receipt of the letter, or (ii) to grieve the recommended termination through the Federation's grievance procedures. On September 2, Appellant contacted Stutman, who explained the details of the two options to him. Appellant sought to set up a meeting with her, but she declined, stating that she had already given him all of the information she had. Appellant then tried several times to contact her supervisor, who informed him that the Federation had already told him whatever he needed to know to select an option, and that, since he was no longer employed by the District, its services were no longer available to him.

On September 12, 1996, Appellant filed another discrimination charge with the PHRC, which he amended on October 5, 1998. Both charges were cross-filed with the EEOC. In October 1998, after securing counsel, Appellant requested a hearing before the Board of Education, which was eventually scheduled for June 1, 1999. On May 28, 1999, he withdrew his request for a hearing. On August 16, 1999, nearly three years after receiving the initial letter from the District, Appellant filed the instant action.

As the District Court summarized in its October 2, 2001 opinion granting in part Appellees' motions to dismiss, Appellant alleged fifteen causes of action against the District, the Federation, and a number of individual employees of both. The District

Court dismissed all of Appellant's claims against the Federation and most of his claims against the District. It permitted Appellant's claims against the District of: (i) discrimination, hostile work environment harassment, and retaliation in violation of Title VII of the Civil Rights Act of 1964 and the Pennsylvania Human Rights Act ("PHRA"), and (ii) denial of the opportunity to elect continuation coverage in violation of the Consolidated Omnibus Budget Reconciliation Act ("COBRA"), to proceed to a bench trial, after which it dismissed Appellant's complaint. Appellant now appeals.

We have jurisdiction over this appeal pursuant to 28 U.S.C. § 1291. We review the District Court's partial grant of Appellees' motions to dismiss de novo. See Alston v. Parker, 363 F.3d 229, 232-33 (3d Cir. 2004). With respect to the claims on which the District Court entered judgment following a bench trial, we review its factual findings for clear error, and subject its choice and interpretation of legal precepts to plenary review. See Gordon v. Lewistown Hosp., 423 F.3d 184, 201 (3d Cir. 2005).

Appellant raises the following issues on appeal: (i) dismissal of his 42 U.S.C. §§ 1981, 1983, 1985(3), and state law claims as time-barred; (ii) dismissal of his Title VII and PHRA claims against the Federation; (iii) denial of his Title VII and PHRA claims against the District; (iv) denial of his motion to amend his complaint; (v) denial of his

6

motion to compel discovery; and (vi) failure to rule on his motion to stay or for a new trial.  We will address the merits issues first, followed by the procedural issues.[1]

Appellant first contests the District Court's dismissal of his 42 U.S.C. §§ 1981, 1983, 1985(3), and state law tort, breach of collective bargaining agreement, and duty of fair representation claims as time-barred.  In addressing these claims, the District Court concluded that all of Appellant's claims against the District accrued on September 1, 1996, when he received the letter from the Board of Education recommending that he be terminated.  Giving Appellant the benefit of the doubt, the District Court concluded that the latest date on which his claims against the Federation could have accrued was May 7, 1997, the date on which, according to Appellant's second amended complaint, he last communicated with his Federation representative.  Applying the two-year statute of limitations for personal injury actions under Pennsylvania law to Appellant's claims under §§ 1981, 1983, and 1985(3), the District Court concluded that all of his claims were time-barred.  See 42 U.S.C. § 1988;  Lake v. Arnold, 232 F.3d 360, 368-69 (3d Cir. 2000).  The District Court similarly held that Appellant's claims of breach of the duty of fair representation against the Federation and breach of the collective bargaining agreement against the District were subject to a six-month limitation period and were likewise time-barred.  See DelCostello v. Int'l Bhd. of Teamsters, 462 U.S. 151, 164-65,

---

[1]We will only address those issues raised by Appellant in his lengthy informal brief. See Laborers' Int'l Union of N. Am., AFL-CIO v. Foster Wheeler Corp., 26 F.3d 375, 398 (3d Cir. 1994) ("An issue is waived unless a party raises it in its opening brief.").

172 (1983). Finally, the Court concluded that Appellant's defamation, fraud, intentional infliction of emotional distress, and intentional interference with contractual relations claims were also time-barred. See 42 Pa. Cons. Stat. Ann. §§ 5523, 5524(7).

Appellant contests the dates used by the District Court to begin the limitations period, arguing instead that the clock should begin to run from May 28, 1999, the date on which Appellant withdrew his request for a Board of Education hearing. He maintains that prior to that date, had he filed a lawsuit, it would have been dismissed for failure to exhaust his administrative remedies. It appears that Appellant has confused the various avenues of redress which were available to him. It is true that, as a public employee, Appellant could not have contested the merits of his termination in court prior to the conclusion of the Board of Education proceedings. See 24 P.S. §§ 11-1127, 11-1131, 11-1132. However, the merits of his termination are not at issue here; this is an action for employment discrimination. Appellant was required to exhaust his remedies through the EEOC prior to filing a federal lawsuit pursuant to Title VII. However, as the District Court noted in its opinion, his pursuit of administrative remedies for his Title VII claim did not operate to toll the limitations period for his §§ 1981, 1983, 1985(3), or state law claims. See Johnson v. Ry. Express Agency, 421 U.S. 454, 466 (1975). Accordingly, we agree with the District Court that all of these claims were time-barred.

Appellant next contests the dismissal of his Title VII and PHRA claims against the Federation.[2] The District Court first dismissed all claims against employees of the District and the Federation in their individual capacities. See Sheridan v. E.I. DuPont de Nemours & Co., 100 F.3d 1061, 1078 (3d Cir. 1996) (en banc). The Court further dismissed Appellant's claims with respect to the Federation, holding that he had failed to allege facts from which an inference could be drawn that the Federation discriminated against him. See McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802 (1973); McDonald v. Santa Fe Trail Transp. Co., 427 U.S. 273, 285 (1976).

On appeal, Appellant alleges that the Federation is liable for his discharge because it was aware that other non-white teachers had committed the same violations as Appellant was terminated for and it therefore participated in the District's cover-up of its discriminatory practices. He further maintains that the Federation refused to meet with him to discuss his options, while in the past it had offered such meetings to non-Asian members, and that it did not file a grievance to contest his termination.

We agree with the District Court that Appellant failed to state a claim for discrimination against the Federation. The Federation did not grieve Appellant's termination because he elected to pursue a Board hearing rather than the union's grievance procedure in response to his letter of termination. Appellant's bare allegation

---

[2]As the District Court noted, courts have interpreted the PHRA consistent with Title VII. See Slagle v. County of Clarion, 435 F.3d 262, 265 (3d Cir. 2006).

that the Federation refused to offer him a meeting to discuss his options does not suffice to state a claim under Title VII, particularly where the record reflects that the Federation represented Appellant over the course of his disputes with Dr. Lytle and the District, and discussed his options with him by telephone on more than one occasion. Finally, as will be discussed herein, because we will affirm the District Court's determination that Appellant's discrimination claims against the District lack merit, we cannot conclude that his coextensive claims against the Federation should have been permitted to proceed.

Finally, Appellant contests the merits of the District Court's denial of his claims of discrimination and retaliation against the District, following a five-day bench trial. Based on the testimony and evidence presented at trial, the District Court concluded that Appellant had not carried his burden of proving that he was subject to harassment or discrimination based on his national origin, or retaliation either for filing the March 1995 PHRC claim or for threatening to file another PHRC complaint in his February 12, 1996 letter to the Superintendent of Schools. While articulating some concerns regarding the process by which the audit was conducted, the District Court, acting as the fact finder, "accept[ed] the school system's defense that it has put forward, and [found that it had] articulated a ground for dismissal that has nothing to do – simply nothing to do with plaintiff's national origin, and nothing to do with the fact that the plaintiff had complained initially about Mr. Shumake, and later about Dr. Lytle in a letter to – in letters to – cumulative letters, February 12 and April 1, to the superintendent about Dr. Lytle."

10

The Court further found that Dr. Lytle's actions could not be traced to Appellant's filing of the PHRC complaint against Principal Shumake, as "it addressed a whole scenario that in school terms [was] long gone, and was withdrawn." After the District Court accepted the District's defense as legally sufficient to overcome Appellant's prima facie cases of discrimination and retaliation, it concluded that Appellant had not met its burden of persuading the Court that the District's defense was pretextual. According to the Court, the record did not reflect any bias of Dr. Lytle or any of the other relevant decisionmakers towards people of Asian national origin. With respect to his retaliation claims, the Court found that Appellant had not demonstrated that Dr. Lytle was aware of Appellant's February 12 letter when he issued his March 28 recommendation, and that there was no evidence in the record to support a finding that the Superintendent's decision had been influenced by Appellant's letters.

On appeal, Appellant essentially seeks to contest the entire factual basis for the District Court's decision. Our role, however, is not to re-try the evidence. Rather, our review is limited to whether the District Court's factual findings were "clearly erroneous." We have explained that "a finding is clearly erroneous if we are left with a definite and firm conviction that a mistake has been committed." Gordon, 423 F.3d at 201. According, as we must, due deference to the trial court's evaluation of the

11

witnesses' testimony and credibility, we are not left with such a conviction, and therefore, cannot disturb the District Court's factual findings.[3]

Appellant also challenges several procedural rulings of the District Court. First, on March 19, 2004, more than two years after his claims against the Federation were dismissed, Appellant requested leave to file an amended complaint, seeking to add claims against the Federation for failure to arbitrate a wage claim which accrued in 1996. Appellant contends that its refusal was discriminatory, constituted a breach of the duty of fair representation, and was an intentional tort. The Court denied his motion. While Federal Rule of Civil Procedure 15(a) provides that leave to amend a pleading "shall be freely given when justice so requires," there was no basis for the Court to permit amendment in this case, as Appellant's claims against the Federation had already been dismissed for failure to state a claim, and Appellant's proposed amendment was no more specific with respect to his discrimination claims than his original complaint had been.

Next, Appellant claims that the District Court erred in denying his motion to compel discovery. In its order, the District Court explained that Appellant's motion would be denied without prejudice because, at a settlement conference before Magistrate

_____

[3]We also note that Appellant spends a significant portion of his brief addressing the facts underlying the District's decision to terminate him. As the District Court explained, it found substantial flaws in the process by which the District reached its decision. These flaws notwithstanding, the District Court acknowledged that its role was not to second guess that decision, but only to determine if it was a pretext for an illicit motive, which the Court found it was not. Similarly, the merits of the District's decision are not before us at the present time, and therefore we do not address Appellant's arguments here.

12

Judge Angell, Appellant had agreed to abandon his motion to compel and instead seek answers to the questions posed in his interrogatories by questioning Defendant at trial. Appellant does not contest this characterization of events in his informal brief, but instead argues the merits of his motion. A district court has broad discretion in the conduct of discovery. Pub. Loan Co., Inc. v. Fed. Deposit Ins. Corp., 803 F.2d 82, 86 (3d Cir. 1986). To find an abuse of such discretion, "it is usually necessary to conclude that there has been an interference with a 'substantial right,' . . . or that the discovery ruling is 'seen to be a gross abuse of discretion resulting in fundamental unfairness in the trial of the case.'" Id. at 86 (quoting Marroquin-Manriquez v. I.N.S., 699 F.2d 129, 134 (3d Cir. 1983)). No such abuse exists under the circumstances presented here.

Finally, Appellant challenges the District Court's failure to rule on his motion "to stay issuance of decision or vacate decision for the Defendant School District of Philadelphia," filed after completion of the bench trial and receipt of the Court's oral ruling. In his motion, he asked the Court to either consider the affidavit of, or give him the opportunity to examine under oath, Barbara Pashak, a former fellow teacher at University City High School who Appellant contacted after completion of the trial. While the District Court failed to rule on this motion, we see no reason to remand.

Appellant captioned his motion as one to stay issuance of or vacate the District Court's decision. Nonetheless, we will look to the function of the motion, not its caption, to determine what type of relief a litigant is seeking. See Smith v. Evans, 853 F.2d 155,

13

158 (3d Cir. 1988). Here, the relief requested by Appellant clearly falls under Rule 59(a) of the Federal Rules of Civil Procedure, which provides that, "[o]n a motion for a new trial in an action tried without a jury, the court may open the judgment if one has been entered, take additional testimony, amend findings of fact and conclusions of law or make new findings and conclusions, and direct the entry of a new judgment." We have held that such a motion may be based on "newly discovered evidence" if it: "(1) [is] material and not merely cumulative, (2) could not have been discovered before trial through the exercise of reasonable diligence and (3) would probably have changed the outcome of the trial." Compass Tech., Inc. v. Tseng Labs., Inc., 71 F.3d 1125, 1130 (3d Cir. 1995).

The evidence Appellant sought to introduce does not meet these criteria. In his motion, Appellant averred that he requested Barbara Pashak's contact information from the District but did not receive it, and that he called University City High School in February 2005 and asked for her, but was told she did not work there. Then, when he called again in April 2005, following the close of trial, he found that she did still work there, and obtained an affidavit from her. The underlying lawsuit was initiated in August 1999. We question whether Pashak's whereabouts truly "could not have been discovered before trial through the exercise of reasonable diligence." We need not reach this question, however, because it is clear that Pashak's testimony would not have changed the outcome of the trial. Appellant explains that Pashak's affidavit confirms his own testimony and statement of the facts. However, the Court did not disbelieve Appellant's

14

testimony, and in fact, it criticized the way in which the decision to terminate Appellant was reached. The Court nonetheless found that the District had acted in good faith in reaching its decision. Pashak's testimony would not have affected this assessment. Because the "new evidence" Appellant sought to introduce would not have affected the outcome of the trial, there was no basis on which the District Court could have granted Appellant's motion.

Accordingly, we will affirm the judgment of the District Court.