

2008 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

3-20-2008

# Wilson v. Childrens Museum

Precedential or Non-Precedential: Non-Precedential

Docket No. 06-4244

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2008

Recommended Citation

"Wilson v. Childrens Museum" (2008). *2008 Decisions.* Paper 1410.
http://digitalcommons.law.villanova.edu/thirdcircuit_2008/1410

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2008 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

_____

No. 06-4244

_____

YVONNE E. WILSON,

Appellant

v.

CHILDREN'S MUSEUM OF PITTSBURGH;
JANE WERNER, Executive Director

_____

On Appeal from the United States District Court
for the Western District of Pennsylvania
(D.C. Civil No. 2:05-cv-01748-AJS)
District Judge: Honorable Arthur J. Schwab

_____

Submitted Under Third Circuit LAR 34.1(a)
on January 28, 2008

Before: SCIRICA, Chief Judge, and RENDELL, Circuit Judge,
and RODRIGUEZ,* District Judge.

Filed: March 20, 2008

_____

OPINION OF THE COURT

_____

_____

* Honorable Joseph H. Rodriguez, Senior Judge of the United States District Court
for the District of New Jersey, sitting by designation.

RENDELL, Circuit Judge.

Yvonne E. Wilson ("Wilson") appeals from the District Court's order granting summary judgment in favor of the Children's Museum of Pittsburgh (the "Museum") and Jane Werner, Executive Director ("Werner") (jointly, "Defendants"). Wilson contends that the District Court failed to evaluate and analyze the merits of her retaliation claim and erred in concluding that (1) there was insufficient evidence of discrimination and harassment, (2) there was a lack of genuine issues of material fact regarding retaliation, and (3) she was afforded no disparate treatment. For the reasons stated below, we will affirm.

## I.

Wilson was hired in January 2000 as the Executive Administrative Assistant to Werner. Wilson's complaint sets forth claims for discriminatory treatment by the Museum on account of Wilson's age, race, and disabilities. Wilson has numerous physical problems although she has maintained an active life.[1] During her time at the Museum, Wilson sought varying accommodations to enable her to work, and she challenges the Museum's assertions as to the promptness with which it responded to her indication of a need for accommodation. She contends that her request not to be

---

[1] Among the physical infirmities from which Wilson suffers are the following: osteoarthritis in her spine, fingers, neck, and knees; a heart murmur; high blood pressure; abdominal hernia; a cyst on her liver; spots on her lungs; asthma; an atrophic kidney; carpal tunnel problems; venostasis; digestive problems; eye problems; and a painful right shoulder.

2

responsible for the mail was a prime example of a request for accommodation that was not granted by the Museum.

Wilson contends that her position at the Museum was a management position, but that she was required to do demeaning tasks, was excluded from management meetings, did not receive proper credit for a program she created and spearheaded, and was denied opportunities such that she was "held in a lower regard than she should be, and thus subject to less respect and less stature than the position is deemed to contemplate." (Second Am. Compl. ¶ 26 (Suppl. App. 5).)

Wilson avers that the Museum was becoming frustrated with her medical problems and believed them to be outright fabricated or grossly exaggerated. Ultimately, Wilson asserts, the Museum began piling on "additional work duties and responsibilities in an effort to make the plaintiff appear incompetent and unqualified," and the problems between Wilson and the Museum then worsened. (*Id.* ¶ 36 (Suppl. App. 6).) Wilson recites a series of incidents that she contends reflect a "pattern of harassment and retaliation" conducted, in part, "in an effort to create a pre-textual reason for her termination." (*Id.* ¶ 37-38.)

On December 28, 2004, Wilson filed a complaint with the Pennsylvania Human Relations Commission, and she avers that, thereafter, the Museum retaliated against her by engaging in harassing tactics designed to create the appearance of insubordination on her part.

3

Wilson focuses on events that took place in late 2004 and early 2005 revolving around the duties she was assigned as part of her job. In November 2004, Wilson requested a meeting with Werner and the Human Resources Director, Cathy Cicco ("Cicco") to discuss a number of her workplace issues. During that meeting, Wilson "lodged informal complaints against Ms. Werner, accusing her of, among other things, disrespect and harassment." (Appellant's Br. 10.)

Thereafter, discussions ensued with respect to Wilson's job description. Plaintiff subsequently sent an e-mail to Cicco informing her that she wished to have the Personnel Committee review her concerns, as she believed that Werner was "actively seeking a way to justify firing her, and that she felt harassed and retaliated against." (*Id.*) One of the key issues was the handling of the Museum's mail, which was Wilson's responsibility, but a responsibility that she was concerned that she could not perform because of her physical condition.[2]

On December 9, 2004, Wilson requested that a meeting be scheduled for December 16, 2004, to discuss the mail situation and what she perceived to be added responsibilities that she was undertaking. Thereafter, she canceled the meeting until she

---

[2]Wilson testified that her responsibilities in connection with the mail consisted of: retrieving it from a location approximately 42 feet from her office; sorting the mail; running it through a postage machine; re-sorting and banding it; and taking the mail to the mailbox at the end of the day. She testified that she would process an average of about 100 pieces per day. If the mail was too heavy for her to carry, she would make multiple trips, and at times she would have interns assist her in handling the mail duties.

4

met with the Personnel Committee. On January 13, 2005, Werner set up a meeting with Wilson and the Chair of the Personnel Committee, but Wilson did not appear, and she refused to meet with Werner and the Chair that day. Thereafter, Werner and Cicco went to Wilson's office to discuss the situation, whereupon Wilson became extremely agitated. Werner thereupon terminated Wilson's employment effective January 18, 2005, and outlined in the termination letter the events that had led up to the termination, concluding that Wilson's negative attitude and insubordination, coupled with loud accusations within earshot of staff members and visitors and Wilson's rejection of efforts to meet with her, "left the Museum with no alternative but to terminate [Wilson's] employment." (Suppl. App. 157.)

Wilson brought a complaint under the Americans with Disabilities Act, Title VII, the Pennsylvania Human Relations Act, and the Age Discrimination in Employment Act. Wilson also pled common law claims of intentional infliction of emotional distress, negligent infliction of emotional distress, and negligence.

Defendants urge that Wilson cannot succeed because she has failed to respond to the request for admissions submitted by Defendants and, therefore, has admitted all of the salient facts in a way favorable to Defendants. Defendants also contend that, because Wilson was determined by the Social Security Administration to have been disabled as of January 13, 2005, she was not an individual qualified for her job and therefore could not state a prima facie case on either age, race, or disability discrimination.

5

Upon review of Defendants' motion for summary judgment, the District Court engaged in a thorough review of the facts as alleged by Wilson and as testified to by various employees in depositions. Particularly salient were the facts of the incident that resulted in Wilson's termination, especially the testimony of other employees as to the fact that Wilson raised her voice, loudly instructing Werner to "leave me alone," while no one heard Werner or Cicco.

The District Court then reviewed the elements of the claims asserted by Wilson and assumed, for the sake of argument, that Wilson had established a prima facie case of the various forms of discrimination.[3] The Court then proceeded to analyze Wilson's claims under the familiar *McDonnell Douglas* formula, first determining whether Defendants had proffered a legitimate nondiscriminatory reason for Wilson's termination. The District Court noted that Defendants' termination of Wilson was explained as having been based upon the fact that Wilson's conduct was unacceptable in that she had become extremely agitated and was insubordinate and yelled at Werner, in a place and manner that could be heard by staff and by visitors to the Museum. The District Court concluded that this was a legitimate nondiscriminatory reason for Wilson's termination.

---

[3]The District Court noted that Wilson had in fact failed to set forth a prima facie case of age discrimination, as she was replaced with a 59-year-old female who also had a disability. Although the Court stated that it was "inclined to agree with defendant that plaintiff ha[d] failed to set forth a prima facie case of discrimination" for any of her claims, the Court nonetheless performed the applicable *McDonnell Douglas* analysis "in an abundance of caution." *Wilson v. Children's Museum of Pittsburgh*, No. 05cv1748, 2006 WL 2529595, at *6 n.2 (W.D. Pa. Aug. 31, 2006).

6

The District Court then considered whether upon shifting the burden of proof to Wilson, she had produced sufficient evidence of pretext—that is, evidence from which a fact finder could reasonably disbelieve the Defendants' articulated reasons or believe that an invidious discriminatory reason was more likely than not a motivating or determinative cause of Defendants' action. *See Fuentes v. Perskie*, 32 F.3d 759, 764 (3d Cir. 1994).

The District Court concluded that Wilson had made "bald allegations" that did nothing to establish inconsistencies, weaknesses, or implausibilities for the Defendants' actions. *Wilson*, 2006 WL 2529595, at *6. "Absent from the record is any evidence to support her conclusory allegations that her age, race and/or disability played any part in the employment actions which were taken against her." *Id.*

Further, the District Court found that the claims for harassment and hostile work environment fell short because, although Wilson perceived that she was not shown appropriate respect by various employees, she pointed to no evidence that linked any of the alleged harassing conduct to her age, race, or disability. In addition, Wilson did not argue that the conduct was pervasive and regular or that the alleged discriminatory conduct would adversely affect a reasonable person of the same protected status.

Finally, the District Court concluded that Wilson's inadequate compensation claim was time barred and her Pennsylvania common law claims were preempted by the Pennsylvania Workers Compensation Act.

7

**II.**

We exercise plenary review over the District Court's grant of summary judgment, applying the same standard as did the District Court. *Slagle v. County of Clarion*, 435 F.3d 262, 263 (3d Cir. 2006). Our jurisdiction is found in 28 U.S.C. § 1291.

We find no error in the District Court's analysis of the record before it, or in its application of the relevant legal tests to the undisputed facts. Assuming Wilson did proffer a prima facie case of discrimination and/or retaliation,[4] we agree with the District Court that the Defendants offered a legitimate nondiscriminatory reason for terminating Wilson and that she did not adduce evidence that would cause us to conclude that the reason was pretextual.

Moreover, Wilson's claims of harassment and hostile work environment must fail for the reasons set forth by the District Court. In addition, we agree with the District Court's conclusion that the state law claims are preempted.

Accordingly, we will AFFIRM.

---

[4]Specifically as to Wilson's retaliation claim, we note, as did the District Court, that although Wilson filed a complaint with the Pennsylvania Human Relations Commission on December 28, 2004, she never told anyone at the Museum that she did so. Werner testified that she did not become aware of the complaint until after plaintiff was terminated. Under these circumstances, we cannot accept that the filing of the complaint was the cause of the adverse employment actions Wilson alleges. Accordingly, we conclude that Wilson has failed to set forth a prima facie case of retaliation.

8