**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 16-3616
_____

AURORA KIM PARADISIS,
                                        Appellant

v.

ENGLEWOOD HOSPITAL MEDICAL CENTER
_____

On Appeal from the United States District Court
for the District of New Jersey
(D.C. Civ. No. 2-13-cv-05936)
District Judge: Honorable Madeline C. Arleo
_____

Submitted Pursuant to Third Circuit LAR 34.1(a)
February 17, 2017

Before:  RESTREPO, SCIRICA and FISHER, <u>Circuit</u> <u>Judges</u>

(Opinion filed: February 24, 2017)
_____

OPINION[*]
_____

PER CURIAM

        Kim Paradisis appeals from an order of the District Court granting summary

judgment to her former employer.  For the reasons that follow, we will affirm.

---

[*] This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not constitute biding precedent.

Paradisis began working for Englewood Hospital & Medical Center in 1995 as a student nurse intern. Between 1995 and 2001, she worked at the Hospital as a nursing assistant, a Maternal Child Health ("MCH") division float nurse, Care Manager of the Pediatric Unit, and Patient Care Director of the Mother/Baby Unit. In 2001, she left full-time employment at the Hospital to pursue other career opportunities, but continued at the Hospital as a casual per diem nurse.

On January 18, 2012, Paradisis was terminated from her casual per diem position for failing to make herself available to work on a winter holiday, specifically New Year's Day. She filed a grievance with her Union, Health Professionals and Allied Employees Local 5004, for unlawful termination. Documentation was provided to the Hospital showing that Paradisis had missed work because she had pneumonia and she was reinstated to her per diem status. She did not immediately return to work, however. Instead, on August 29, 2012, she sent a letter to Filmore Flores, her supervisor, and Shaija George, the Patient Care Director of the Neonatal Intensive Care Unit ("NICU"), stating that, before she could return to work, the Hospital needed to provide her with additional training. Specifically, Paradisis requested: (1) registration for the September 17, 2012 Neonatal Resuscitation Program ("NRP") course; (2) registration for either the October 20 or 27, 2012 Pediatric Advanced Life Support ("PALS") course; and (3) computer training and shadowing of an MCH float member through the neonatal, pediatric, and Mother/Baby Unit.

The Hospital met some but not all of Paradisis' demands. She received NRP training on September 17, 2012, but the Hospital told her that float nurses were not required by the Hospital to obtain PALS certification. The Hospital also scheduled

2

Paradisis for eight (8) hours of computer training during the first week of November 2012. Due to Superstorm Sandy, however, Paradisis received only four (4) of those hours of computer training.

Paradisis returned to work in January 2013. On January 31, 2013, she worked an overnight shift in the Mother/Baby Unit. During and following that shift, three nurses, Barbara Kontos, Anne Marie Ayala, and Gillian Rothenberg, brought certain administrative and safety issues regarding Paradisis' performance to the attention of Patient Care Director George. The nurses reported that Paradisis had failed to submit an OptiVox report on all patients,[1] failed to provide a Hepatitis B vaccine to a patient prior to discharge, and failed to administer the Hospital's Postpartum Depression Screening to a patient prior to discharge. George initiated an investigation into the allegations and confirmed that Paradisis had not fulfilled these requirements. George also received additional complaints from a patient who reported that Paradisis was uncaring and did not visit her room as often as the other nurses. Due to these allegations, George further investigated whether Paradisis had complied with the Hospital's Department of Nursing Rounding Standard. George learned that Paradisis failed to sign the rounding sheets for her patients on January 31, 2013, as required by Hospital policy. George's investigation revealed further that Paradisis inaccurately reported a baby's weight and then failed to alert medical staff to a potentially dangerous weight loss.

On February 5, 2013, Flores emailed Paradisis to schedule a meeting to discuss the issues that had arisen on her January 31st shift. Paradisis replied that she was not

---

[1] OptiVox is the name of the system that Hospital nurses use for non-urgent, routine shift-to-shift reporting.

available on the dates provided by Flores, and that she was confident that the care she had provided to her patients was "stellar." She also stated that "[i]dle gossip rooted in a gang mentality from the Mother/Baby staff is not of interest to me." On February 12, 2013, Paradisis emailed George, Flores, and the Local President of the Union, complaining about the training she had received upon her return to the Hospital, and on February 21, 2013, she filed a grievance through the Union, alleging that the Hospital had failed to provide her with adequate education and training.

On March 13, 2013, Paradisis, her union representative, George, and Flores met to discuss the performance issues noted when Paradisis had worked the January 31st shift. Following the meeting, the Hospital determined that Level 1 discipline, specifically, a verbal warning, was justified. In a letter dated March 18, 2013, Paradisis was issued a notice of discipline for violating the Hospital's service excellence standards, communication standards, and code of conduct safe clinical practice standards. The notice of discipline was issued for Paradisis' failure to enter an OptiVox shift report for the incoming nurses; failure to administer a Hepatitis B vaccine, Postpartum Depression Screening, and discharge screening on a patient; improper weighing of a baby without adequate follow-up; complaints of an uncaring attitude towards a patient; and a failure to properly perform and document rounding as required by Hospital policy. Meanwhile, Paradisis' grievance over inadequate training, although denied, resulted in the Hospital's agreeing to schedule an additional eight (8) hours of training, the date to be determined in the future.

On April 12, 2013, Paradis filed a charge with the U.S. Equal Employment Opportunity Commission ("EEOC"), asserting that the Hospital had retaliated against her

4

by unjustly disciplining her for demanding additional training. On April 19, 2013, Paradisis' union representative initiated a new grievance for unjust discipline and retaliation for filing the inadequate training grievance. Following a grievance hearing on May 2, 2013, the verbal warning-Level 1 discipline was upheld.

On May 14, 2013, Patient Care Director George sent Paradisis her annual performance evaluation for 2012. In the evaluation, Paradisis received a "Successful" mark in every reviewable category except "Communication," where she received a "Needs Improvement." In the category of "Expectations for Performance Improvement," George noted that Paradisis should "[r]eview and comply with Service excellence standards, code of conduct and communication standards." On June 7, 2013, Paradisis notified the Hospital that she would be filing a grievance based on her 2012 performance evaluation. On June 18th, however, her union representative advised her that the grievance would be held in abeyance because the Union and Hospital were working on a settlement.

The Hospital then scheduled the previously promised additional training for Paradisis for the evening of June 28, 2013. Patient Care Director George emailed Paradisis' union representative to confirm that Paradisis would be attending the training, and Flores, her supervisor, emailed Paradisis seeking confirmation that she would attend the June 28th training. On June 26th, Paradisis, instead of responding to the Hospital, emailed her union representative and asked that representative to remind George and Flores "of appropriate protocol during the grievance process." Paradisis then failed to attend the June 28 training, and, after this failure, the Hospital never scheduled her to work again.

5

On October 4, 2013, Paradisis filed a civil action pro se in the United States District Court for the District of New Jersey under Title VII of the Civil Rights Act of 1964 ("Title VII"). Paradisis alleged that the Hospital, in eliminating her per diem work, had discriminated against her on the basis of her brown skin color and Puerto Rican heritage. She also alleged that she was unjustly disciplined and given a poor performance evaluation for demanding training and filing grievances with her Union. The Hospital answered the complaint and discovery ensued. Paradisis was deposed and numerous Hospital employees were deposed, including Patient Care Director George and Nurse Kontos. At the close of discovery, the Hospital moved for summary judgment. Paradisis opposed the motion. In an Order entered on September 6, 2016, the District Court awarded summary judgment to the Hospital and explained its reasoning in a thorough Opinion.

Paradisis appeals. We have jurisdiction under 28 U.S.C. § 1291. We review a District Court's grant of summary judgment *de novo*. Alcoa, Inc. v. United States, 509 F.3d 173, 175 (3d Cir. 2007). In her brief, Paradisis argues specifically that the verbal warning she received was fraudulent and contrived by the Hospital and based on events which should not have resulted in discipline, and that her 2012 performance evaluation, to the extent that she was criticized, was based on the contrived verbal warning. She further argues that the Hospital retaliated against her and ultimately terminated her for filing grievances, and that the Hospital's actions were motivated by discriminatory animus.

We will affirm. Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a

6

matter of law." Fed. R. Civ. P. 56(a).  The moving party has the initial burden of identifying evidence that shows an absence of a genuine issue of material fact, Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  In addition, the District Court is required to view the facts in the light most favorable to the non-moving party and make all reasonable inferences in her favor, see Armbruster v. Unisys Corp., 32 F.3d 768, 777 (3d Cir. 1994).  Furthermore, credibility determinations on material issues cannot be made in the context of a motion for summary judgment, nor may a District Court weigh the evidence.  See Petruzzi's IGA Supermarkets, Inc. v. Darling-Delaware Co., Inc., 998 F.2d 1224, 1230 (3d Cir. 1993).

Nevertheless, the nonmoving party may not rest on mere allegations or denials, Fed. R. Civ. Pro. 56(e)(2), (3).  See also Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986).  To defeat the Hospital's motion for summary judgment, Paradisis was required to designate specific facts by use of affidavits, depositions, admissions, or answers to interrogatories showing that there was a genuine issue for trial.  See Fed. R. Civ. P. 56(c) (setting forth requirements for supporting or opposing party's assertion that a fact cannot be or is genuinely disputed).  Ultimately, "[w]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial."  Matsushita Electric Industrial Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

To prevail on a Title VII claim of discrimination, a plaintiff must first establish a prima facie case.  A prima facie case of discrimination based on skin color or national origin requires that a plaintiff show the following: (1) she belongs to a protected class; (2) she is qualified for the position; (3) she suffered some form of adverse employment

7

action; and (4) the adverse employment action occurred under circumstances that give rise to an inference of unlawful discrimination. St. Mary's Honor Center v. Hicks, 509 U.S. 502, 506-07 (1993); Texas Dep't of Community Affairs v. Burdine, 450 U.S. 248, 253 (1981); McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802 (1973). To prevail on a claim of Title VII retaliation, a plaintiff is required to show that: (1) she engaged in activity protected by Title VII; (2) she suffered an adverse employment action; and (3) there was a causal connection between her participation in the protected activity and the adverse employment action. Moore v. City of Philadelphia, 461 F.3d 331, 340-41 (3d Cir. 2006).

If the plaintiff makes out a prima facie claim of discrimination and/or retaliation, the burden shifts to the defendant, who must "articulate one or more legitimate, non-discriminatory reasons for its employment decision." Waldron v. SL Indus., Inc., 56 F.3d 491, 494 (3d Cir. 1995). If the defendant is able to articulate such a reason, the burden shifts back to the plaintiff, who must demonstrate that the employer's proffered reasons were merely a pretext for intentional discrimination. McDonnell Douglas, 411 U.S. at 804. Specifically, to survive a motion for summary judgment in a Title VII case, a plaintiff must point to evidence which: (1) "casts sufficient doubt upon each of the legitimate reasons proffered by the defendant so that a factfinder could reasonable conclude that each reason was a fabrication;" or (2) allows the factfinder to reasonably conclude that "discrimination was more likely than not a motivating or determinative cause of the adverse employment action." Fuentes v. Perskie, 32 F.3d 759, 762 (3d Cir. 1994). A plaintiff can demonstrate the latter by "showing that the employer in the past had subjected [her] to unlawful discriminatory treatment, that the employer treated other,

8

similarly situated persons not of [her] protected class more favorably, or that the employer has discriminated against other members of [her] protected class or other protected categories of persons." Id. at 765.

The District Court noted the appropriate legal standards, reviewed the summary judgment record, and concluded that: (a) the Hospital's decision not to provide Paradisis with PALS training or the other requested training did not constitute an adverse employment action because Paradisis failed to show that the training was required as a condition of her employment as a per diem nurse; (b) the verbal warning issued pertaining to Paradisis' work on January 31, 2013 did not constitute an adverse employment action, and, even if it did, Paradisis did not show that the Hospital's reasons for the verbal warning were a pretext for discrimination; (c) the 2012 performance evaluation did not constitute an adverse employment action, and, even if it did, Paradisis did not show that the Hospital's reasons for the evaluation were a pretext for discrimination; and (d) Paradisis did not show that the Hospital's reason for removing her from the work schedule – her failure to attend the June 28th orientation – was a pretext for discrimination.

We conclude that Paradisis' arguments on appeal do not persuasively show that the District Court erred in its determination that a trial was not warranted on her claim of discrimination. We agree with the District Court that the Hospital's decision not to provide Paradisis with PALS training and the other requested training was not an adverse employment action because it had no impact on the terms of Paradisis' employment. An actionable adverse employment action is "a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different

9

responsibilities, or a decision causing a significant change in benefits." Burlington Industries, Inc. v. Ellerth, 524 U.S. 742, 761 (1998). Paradisis' qualifications were never at issue and she was permitted to work without the requested education and training. She was not otherwise reprimanded, docked pay, suspended, or terminated due to her failure to receive such training. Accordingly, this was not an adverse employment action within the meaning of Title VII.

As the District Court concluded in the alternative, we will assume that the verbal warning-Level 1 discipline and the portion of Paradisis' performance evaluation that was not positive constitute adverse employment actions. In addition, the termination plainly was an adverse employment action. Accordingly, having sufficiently established adverse employment actions, Paradisis was required to show that the verbal warning, performance evaluation, and her eventual termination occurred under circumstances that give rise to an inference of unlawful discrimination. St. Mary's Honor Center, 509 U.S. at 506-07. We agree with the District Court that the Hospital proffered legitimate, non-discriminatory reasons for each adverse action. The summary judgment record establishes that the violations found by the Hospital in connection with Paradisis' January 31st shift were based in fact and were not pretextual, fraudulent, or fabricated. That Paradisis' patients may not have been in any real danger or distress as a result of her actions or omissions, as she appears to have asserted, does not mean that the violations were "fraudulent." Paradisis provided no evidence to show that the verbal warning was improper besides her subjective belief that it was unwarranted, and thus she failed to cast doubt on its validity. The "Needs Improvement" notation in the performance evaluation regarding Paradisis' communication skills was based on the verbal warning and notice of

10

discipline issued to her, wherein it was concluded that she had violated the Hospital's service excellence and communication standards and code of conduct. Because the verbal warning was legitimate, the "Needs Improvement" notation also was legitimate. Last, Paradisis' termination was based on her plainly inexcusable failure to attend the additional training scheduled for June 28, 2013, which she herself had demanded in connection with a grievance.

Moreover, Paradisis did not provide competent evidence to show that her brown skin color and/or Puerto Rican heritage was the motivating force behind the three adverse employment actions. See McDonnell Douglas, 411 U.S. at 804; Fuentes, 32 F.3d at 762. We thus agree with the District Court that she did not satisfy the fourth element of a prima facie case of discrimination for any of these adverse employment actions. Paradisis' evidence of unlawful discriminatory treatment was scant indeed. She testified in her deposition that, in November 2012, upon meeting her for the first time, Patient Care Director George said "Oh, you're Kim Paradisis? I pictured you big and tall." She further testified that, at a meeting on May 2, 2013 to discuss the requested training (and other issues), Ann Marie Shears, the Vice President of Clinical Services, "mouthed" to her "[w]hy don't you pay for it yourself," and "[y]ou people want everything handed to you." She testified that, at the close of the meeting, Shears gave her a handshake that was much too hard. None of this even remotely demonstrates that the adverse employment actions occurred under circumstances giving rise to an inference of intentional discrimination based on skin color and/or national heritage. Even the statement "you people" is too ambiguous to constitute evidence of discrimination where, as here, Shears just as easily could have been referring to all nurses or all MCH float nurses, see

11

Anderson v. Wachovia Mortgage Corp., 621 F.3d 261, 269 (3d Cir. 2010). Accordingly, summary judgment on Paradisis' claim of discrimination was proper.

With respect to Paradisis' retaliation claim, the District Court concluded, and we agree, that, in part, Paradisis did not engage in protected activity, and where she did, she failed to produce any evidence from which a reasonable factfinder could conclude that the Hospital retaliated against her for engaging in protected activities. The "anti-retaliation" provision of Title VII protects those who participate in certain Title VII proceedings and those who oppose discrimination made unlawful by Title VII. See Moore, 461 F.3d at 341. Opposition to discrimination can take the form of informal protests of discriminatory employment practices, including making complaints to management. Id. See also Curay-Cramer v. Ursuline Academy of Wilmington, Del., Inc., 450 F.3d 130, 135 (3d Cir. 2006).

Filing grievances unrelated to discrimination does not, however, constitute protected activity for purposes of a Title VII retaliation claim. See Barber v. CSX Distribution Services, 68 F.3d 694, 701-02 (3d Cir. 1995). We agree with the District Court's "protected activity" determinations. Paradisis' first grievance challenging her January 2012 termination did not constitute protected activity. The Hospital terminated her because she failed to work a winter holiday and she established that she was sick with pneumonia and thus unable to work. The grievance she filed through her Union properly made no reference whatever to discrimination based on skin color or national origin, and, thus, it failed to identify any conduct proscribed by Title VII. Paradisis' second grievance asserted that the Hospital failed to provide her with adequate education and training. This grievance also made no mention of any type of discrimination protected by

12

Title VII and thus does not constitute protected activity. With respect to Paradisis' grievance concerning unjust discipline (the verbal warning), the sole reference to discrimination in this grievance was the reference to a contract section entitled "Non-Discrimination." The mere mention of discrimination, however, does not transform a general grievance into opposition to unlawful activity under Title VII. See Slagle v. County of Clarion, 435 F.3d 262, 268 (3d Cir. 2006) (even though Title VII sets a "low bar" for employees seeking protection against retaliation, vague allegations of discrimination do not meet even this "low bar"). Since Paradisis' unjust discipline grievance barely mentioned discrimination, and she did not provide competent evidence to show that she actually pursued a claim of discrimination when meeting with hospital staff to resolve this grievance, it too does not constitute protected activity, id.

Accordingly, Paradisis' earliest protected activity was the filing of her first claim with the EEOC on April 12, 2013.[2] To establish the required causal connection between an employee's participation in a protected activity and an adverse employment action, a plaintiff must show that the employer took "an adverse employment action after or contemporaneous with the employee's protected activity." Farrell v. Planters Lifesavers Co., 206 F.3d 271, 279 (3d Cir. 2000). We agree with the District Court that any adverse employment action which occurred before April 12, 2013, that is, the verbal warning-Level 1 discipline, cannot form the basis of a retaliation claim. Accordingly, summary judgment was proper on this aspect of Paradisis' retaliation claim.

---

[2] Paradisis subsequently filed two more charges with the EEOC and eventually alleged discrimination on the basis of skin color and national origin.

With respect to the partially negative performance evaluation, which George sent to Paradisis on May 14, 2013, the Hospital asserted in its summary judgment motion that it did not learn of the EEOC case until May 22, 2013, and thus there could not possibly be a causal connection between the EEOC charge and the performance evaluation. We note, however, that the close proximity of the two dates – when the Hospital says it learned about the EEOC charge and when the performance evaluation was delivered to Paradisis – might suggest a genuine issue for trial. Nevertheless, even assuming that Paradisis could show for summary judgment purposes that the Hospital knew of the EEOC filing before it evaluated her 2012 performance (which we do not decide), in the circumstances presented here the temporal connection would not be enough to make a showing of causation. The sole issue is whether the Hospital's justification for the performance evaluation was a pretext for retaliation. Paradisis has not met her burden under McDonnell Douglas to show that the Hospital's proffered reason for the performance evaluation was pretextual. She neither presented evidence that would permit a reasonable factfinder to doubt the legitimacy of the Hospital's proffered reason, nor has she adduced evidence from which a reasonable factfinder could conclude that an "invidious discriminatory reason was more likely than not" the motivating or determinative force behind the performance evaluation. Fuentes, 32 F.3d at 764.[3] The summary judgment record establishes that the "Needs Improvement" notation regarding Paradisis' communication skills was based on the verbal warning and notice of discipline

---

[3] We need not decide whether Paradisis failed to show pretext under the "but for" causation standard applied to Title VII retaliation claims in University of Texas Southwestern Medical Center v. Nassar, 133 S. Ct. 2517, 2534 (2013), because she failed to make the required causation showing even under the traditional and less onerous McDonnell Douglas framework.

that were legitimately issued to her.  Because Paradisis failed to cast doubt on the validity of the verbal warning-Level 1 discipline (which was issued to her before she filed the EEOC charge), she necessarily could not cast doubt on the validity of the performance evaluation.  A reasonable factfinder could not conclude, see Matsushita Electric Industrial Co., 475 U.S. at 587, that the Hospital gave Paradisis a partially negative performance evaluation because she engaged in the protected activity of filing an EEOC charge of retaliation.

Last, Paradisis' termination indisputably occurred after the Hospital learned of the original EEOC charge, but the summary judgment record shows, also indisputably, that Paradisis was removed from the per diem nurse's work schedule because she inexcusably failed to attend the June 28th training, which had been arranged specially for her.  The summary judgment record shows that the date was acceptable to Paradisis, and that both a nurse educator and MCH float nurse were to conduct the training, just as Paradisis had requested.  We agree with the District Court that no reasonable factfinder could conclude that Paradisis' termination was anything other than the result of her failure to attend this training session, and was not in retaliation for her pursuit of a charge before the EEOC.

For the foregoing reasons, we will affirm the order of the District Court awarding summary judgment to the Hospital.  Appellant's motions for leave to file amended supplemental appendix volumes I and II, an amended reply brief, an over-length amended reply brief, and motion with exhibits to strike documents from Appellee's supplemental appendix all are denied.